Frederick J. **RICHMOND,**
**et al., Plaintiffs,**

v.

**AMERICAN SYSTEMS CORPORATION,**
**et al., Defendants.**

**Civ. No. 91–1930–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 1, 1992.

Kenneth Carrington Bass, III, Venable, Baetjer and Howard, McLean, Va., for plaintiffs.

David Michael Sokolow, Washington, D.C., Ginger McGuffie, McGuffie & Handal, Vienna, Va., Mary Lou Soller, Miller & Chevalier, Chartered, Washington, D.C., Raymond Donald Battocchi, McLean, Va., Constantinos George Panagopoulos, Ballard, Spahr, Andrews & Ingersoll, Washington, D.C., for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

### INTRODUCTION

Plaintiffs in this case are minority shareholders of a close corporation who sued the officers, directors, and controlling shareholders of the corporation in state court for alleged violations of state corporate laws establishing fiduciary duties directors, officers, and majority shareholders of close corporations owe minority shareholders and the corporation. Defendants removed to federal court. Now before the Court are plaintiffs' Motion to Remand and defendants' Motions to Dismiss. Central to the disposition of these motions is the question whether certain state law claims brought by minority shareholders of a close corporation against corporate directors and controlling shareholders are preempted by the federal Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as

amended, 29 U.S.C. § 1001 *et seq.* (1976 ed. and Supp. V). For the reasons elaborated here, the Court concludes that (i) defendant Artabane's Motion to Dismiss Count V must be granted; (ii) the remaining defendants' Motions to Dismiss Counts I–IV must be denied; (iii) plaintiffs' Motion to Remand must be granted as to Counts I–IV; and (iv) Counts I–IV must be remanded to the state court from which the case originated pursuant to 28 U.S.C. § 1441(c).

## FACTS

Plaintiffs are minority shareholders of American Systems Corporation ("ASC"), a close corporation organized and existing under the laws of the Commonwealth of Virginia.[1] Defendant H. Thomas Curran ("Curran") is the Chairman of ASC's Board of Directors, as well as its Secretary, Treasurer, and a controlling shareholder. Defendant Forrest G. Ramsey, Jr. ("Ramsey") is President, a Director, and the second controlling shareholder of ASC. Curran and Ramsey are the sole members of ASC's Board of Directors. ASC is a nominal defendant in this action in connection with derivative claims asserted on its behalf. Defendant Joseph A. Artabane is a party to this litigation in his representative capacity as Trustee of the ASC Employee Stock Ownership Trust ("ASC ESOT"), which is an employee benefit plan covered by ERISA. *See* 29 U.S.C. § 1002.

The essential facts, as set forth in the complaint, are as follows.[2] Plaintiffs allege that Curran and Ramsey devised a plan to divert ASC corporate assets to their personal benefit through the creation of ASC ESOT. Specifically, in May 1990, Curran and Ramsey caused ASC to obtain a loan for sixteen million dollars from Sovran Bank to fund an employee stock ownership plan. The loan was secured by ASC assets and guarantees. Using the Sovran loan

proceeds, ASC established ASC ESOT on May 23, 1990. As supplementary funding, ASC, at Curran's and Ramsey's direction, loaned ASC ESOT an additional two million dollars. On May 25, 1990, ASC ESOT used the eighteen million dollars from the Sovran Bank loan and the ASC loan to purchase ASC stock from Curran, Ramsey, and other insider shareholders, but not from plaintiffs. The stock purchase price, set by appraisal, was $144.75 per share. At the time of the appraisal, Curran and Ramsey allegedly knew or should have known that ASC was experiencing a multi-million dollar cost overrun as a result of a contract with the United States Air Force. They allegedly withheld this information from the appraiser, thereby allegedly causing the appraiser to over-value the stock. At no previous time had shares of ASC stock sold for more than $65.00 per share. According to plaintiffs, Curran and Ramsey personally selected the shareholders who would be permitted to sell ASC stock to ASC ESOT. In addition, plaintiffs claim that certain favored ASC employees were issued stock options that enabled them to purchase ASC stock for substantially less than the price at which they later sold the stock to ASC ESOT. Plaintiffs maintain that these stock option transactions significantly and unlawfully diluted plaintiffs' equity interests in ASC.

The result of Curran's and Ramsey's scheme, according to plaintiffs, was an unfair distribution of ASC's corporate assets. Specifically, the scheme resulted in the unfair distribution of corporate assets to fewer than all the shareholders of ASC, thereby substantially diminishing the value of plaintiffs' outstanding shares. ASC's financial statements distributed in November 1991 show that the book value of plaintiffs' stock following the stock sale to ASC ESOT was a negative number. In addition,

---

**1.** Plaintiff Moreton received her ASC shares as part of her divorce settlement with defendant Ramsey in 1984. The other plaintiffs acquired their shares from Moreton. Plaintiffs assert that Ramsey's lingering antagonism about the divorce substantially motivated defendants' actions at issue here.

**2.** For purposes of defendants' motions to dismiss, the allegations stated in plaintiffs' complaint, and the reasonable inferences that may be drawn from them, are taken as true and viewed in the light most favorable to plaintiffs. *See, e.g., Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Rogers v. Jefferson–Pilot Life Ins. Co.,* 883 F.2d 324 (4th Cir.1989).

plaintiffs claim that it would have been in ASC's best interests for ASC ESOT to purchase newly-issued stock instead of outstanding shares belonging to insider shareholders. In that way, the loan proceeds used to fund ASC ESOT would have become available to ASC to offset its financial burdens, burdens plaintiffs claim threaten ASC's existence.

Defendant Artabane was selected to administer ASC ESOT at the direction of an Administrative Committee composed of Mark J. Schuler, William E. Roberts, and Charles E. Sampson, each of whom is an ASC shareholder and officer and each of whose employment is controlled by Curran and Ramsey. The Administrative Committee acted under Curran's and Ramsey's direction, as officers and directors of ASC. Plaintiffs allege that Curran and Ramsey induced Schuler, Roberts, and Sampson to approve the creation and subsequent activities of ASC ESOT by enabling them to benefit personally through the sale of virtually all of their own ASC stock to ASC ESOT. Plaintiffs' allege that Artabane breached his fiduciary duty as trustee by failing to solicit a lower purchase price for the stock from plaintiffs.

Prior to initiating litigation, plaintiffs demanded that ASC seek independent counsel (i) to evaluate whether the Board of Directors had faithfully discharged its duties to the corporation in the establishment of ASC ESOT and (ii) to take appropriate corporate action. ASC rejected plaintiffs' demand and scheduled a shareholders' meeting on December 2, 1991, to consider a resolution to ratify the 1990 creation of ASC ESOT, despite the fact than no such ratification had been sought at the November 1990 shareholders' meeting. Plaintiffs thereafter filed this lawsuit.

Plaintiffs' complaint, initially filed in the Circuit Court of Fairfax County, Virginia, and thereafter removed to this Court, contains five counts. Count I alleges breaches of state common law fiduciary duties owed to plaintiffs as minority shareholders by Curran and Ramsey as controlling shareholders. Count II, a derivative claim, alleges a similar breach of Curran's and Ramsey's state law fiduciary duties owed to ASC. In Count III, also a derivative count, plaintiffs assert that Curran and Ramsey engaged in self-dealing in violation of state law. Count IV is a state law fraud claim. Count V is captioned "Illegal ESOP Transactions." The precise nature of these counts—whether they are state law claims, federal law claims, or mixed state and federal law claims—is disputed by the parties. Plaintiffs claim that the complaint raises purely state law claims intended to present the Virginia state courts with an opportunity to decide whether or not Virginia recognizes an "equal opportunity" doctrine for minority shareholders. Plaintiffs aver that while other states have adopted an "equal opportunity" doctrine, no reported Virginia opinion addresses the question. Defendants, on the other hand, argue that the complaint raises federal causes of action, or, in the alternative, raises state law causes of action that are so completely preempted by federal law as to require resolution in a federal forum.

Now before the Court are plaintiffs' Motion to Remand and Motions to Dismiss filed by Curran, Ramsey, ASC, and Artabane.

## ANALYSIS

### I. *Removal Jurisdiction*

The threshold issue is whether this Court has removal jurisdiction. If not, the inquiry ends, for the removal would have been illegitimate and a remand to state court would be required. On the other hand, if removal jurisdiction exists, the Court must then proceed to consider the other grounds of defendants' threshold attack.

Defendants removed this case under 28 U.S.C. § 1441, subsection (a) of which provides, in pertinent part:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the

district and division embracing the place where such action is pending.

Thus, removal jurisdiction exists if this Court would have had original jurisdiction. That district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States is axiomatic.[3] *See* 28 U.S.C. § 1331. And whether a civil action arises under the laws of the United States and hence whether federal jurisdiction exists "is generally determined by the 'well-pleaded complaint' rule." *Childers v. Chesapeake & Potomac Tel. Co.*, 881 F.2d 1259, 1261 (4th Cir.1989) (citations omitted). See also *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) ("It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law."). Under the "well-pleaded complaint" rule, whether a cause of action arises under the Constitution or a federal law "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of [sic] avoidance of defenses which it is thought the defendant may interpose." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vac. Trust for S.Cal.*, 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–6, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914)). *See also Caterpillar Inc. v. Williams*, 482 U.S. 386, 391, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) (federal jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint"); *Childers*, 881 F.2d at 1261 (same);

*Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 969 (4th Cir.1990) (same).

It is equally settled that under the well-pleaded complaint rule, a case may not be removed to federal court merely because a federal defense exists, even the defense of preemption. *See Taylor*, 481 U.S. at 63, 107 S.Ct. at 1546; *Caterpillar Inc.*, 482 U.S. at 393, 107 S.Ct. at 2430; *Franchise Tax Bd.*, 463 U.S. at 14, 103 S.Ct. at 2848; *Childers*, 881 F.2d at 1261. Yet this principle has an important, but narrow, exception: state law claims may be removed under the "complete preemption" doctrine. *See Taylor*, 481 U.S. at 63, 107 S.Ct. at 1546; *Caterpillar Inc.*, 482 U.S. at 393–94, 107 S.Ct. at 2430; *Franchise Tax Bd.*, 463 U.S. at 22–23, 103 S.Ct. at 2853; *Avco Corp. v. Aero Lodge No. 735*, 376 F.2d 337, 339–40 (6th Cir.1967), *aff'd*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Childers*, 881 F.2d at 1261; *Rayner v. Smirl*, 873 F.2d 60, 63 (4th Cir.), *cert. denied*, 493 U.S. 876, 110 S.Ct. 213, 107 L.Ed.2d 166 (1989); *Zieg v. Shearson/Am. Express Inc.*, 592 F.Supp. 612, 617 (E.D.Va. 1984). Complete preemption occurs where Congress so completely preempts a particular area of law that any claim raising that area of law "is necessarily federal in character" and therefore deemed to arise under federal law. *Taylor*, 481 U.S. at 63–64, 107 S.Ct. at 1546. *See also Caterpillar Inc.*, 482 U.S. at 393–94, 107 S.Ct. at 2430; *Franchise Tax Bd.*, 463 U.S. at 23–24, 103 S.Ct. at 2853–54. In such a case, the preemptive effect of a federal statue is so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Childers*, 881 F.2d at 1261 (quoting *Taylor*, 481 U.S. at 65, 107 S.Ct. at 1547).[4]

---

**3.** Removal jurisdiction for cases involving diversity of citizenship is not relevant here.

**4.** In certain circumstances not present here, a state law claim may be removed if a well-pleaded complaint establishes that the plaintiff's right to relief under state law compels a resolution of a substantial, disputed question of federal law. *See Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. at 2848 (where the cause of action arises under state law, "original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a neces-

sary element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law"). *See also, e.g., Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1915–16, 85 L.Ed.2d 206 (1985) (application of state law substantially depended on analysis of collective bargaining agreement under federal law); *McCormick v. AT & T Technologies, Inc.*, 934 F.2d 531 (4th Cir.1991) (resolution of state cause of action required interpretation of collective bargaining agreement), *cert. denied*, —— U.S. ——, 112 S.Ct. 912, 116 L.Ed.2d 813 (1992).

454

Defendants assert two bases for removal under 28 U.S.C. § 1441(b) and (c). First, they maintain that paragraph 80 of Count V of plaintiffs' complaint expressly states a federal cause of action under ERISA.[5] Second, they argue that removal of all counts is proper under the "complete preemption" doctrine. For the moment, the Court need not address the "complete preemption" doctrine because the plain and unambiguous language of paragraph 80 of Count V clearly sets forth, in part, an ERISA cause of action against defendant Artabane as trustee of ASC ESOT. With one exception not applicable here,[6] federal courts have original and exclusive jurisdiction of ERISA claims. *See* 29 U.S.C. § 1132(e)(1); *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Old Sec. Life Ins. Co.*, 600 F.2d 671, 676 (7th Cir.1979) (federal courts have exclusive jurisdiction over breach of fiduciary duty claims under ERISA); *Smith v. Crowder Jr., Co.*, 280 Pa.Super. 626, 636, 421 A.2d 1107, 1112–13 (Pa.Super.Ct.1980) (same). If any cause of action in a well-pleaded complaint would have come within the original jurisdiction of the district court, removal of the entire case is proper, regardless of whether the district court would have had original jurisdiction over the additional claims. *See* 28 U.S.C. § 1441(c) ("Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title, is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed...."); *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. at 2848. Therefore, because removal of the ERISA claim contained in Count V

was proper, this Court has jurisdiction over all counts of this action.[7] *Cf. United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966) (federal courts have pendent jurisdiction over state claims that share a common nucleus of operative facts with a federal claim).

## II. *Artabane's Motion to Dismiss Count V*

Defendant Artabane, trustee of ASC ESOT, moves to dismiss the ERISA component of Count V on the ground that plaintiffs have no standing to sue him under ERISA. The Court agrees. 29 U.S.C. § 1132(a) limits those parties who may bring civil actions under ERISA to the Secretary of Labor and to participants, beneficiaries, and fiduciaries of ERISA plans. Plaintiffs, as minority shareholders or derivatively on behalf of ASC, do not fit into any of these categories. Consequently, they have no standing to sue under ERISA. *See also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985, 987–88 (4th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990). Plaintiffs acknowledge this, conceding in their brief that they "have neither the standing nor an enforcement mechanism available to bring a cause of action under ERISA." *See also Franchise Tax Bd.*, 463 U.S. at 27, 103 S.Ct. at 2855 ("ERISA carefully enumerates the parties entitled to seek relief under [29 U.S.C. § 1132].... A suit for similar relief by some other party does not

---

5. Paragraph 80 of Count V reads:

    80. The failure of the ESOP Administrative Committee and Defendant Artabane, as Trustee, to seek a lower price from Complainants and to otherwise fully conduct an independent investigation of all circumstances surrounding the establishment of the ESOP was *a breach of the fiduciary duties established under applicable state and federal law, including but not limited to duties under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq.* (emphasis added).

6. State courts have concurrent jurisdiction over cases brought by plan participants or beneficiaries to recover benefits due under the plan's terms, to enforce rights under a plan, or to clarify rights to future benefits under a plan. *See* 29 U.S.C. § 1132(e)(1).

7. Because the Court finds jurisdiction over all counts on the basis of the federal question presented in Count V, it need not, at this stage of the analysis, reach defendants' second ground for removal jurisdiction, namely that Counts I–IV are removable under the complete preemption doctrine.

'arise under' that provision.").[8] Accordingly, Count V must be dismissed in so far as it states a claim under ERISA.

### III. Discretionary Remand of Counts I–IV Under 28 U.S.C. § 1441(c)

█ Once a cause of action has been removed, 28 U.S.C. § 1441(c) provides for discretionary remand of all or part of the case under certain circumstances:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title, is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which state law predominates.

28 U.S.C. § 1441(c). Thus, under § 1441(c), before exercising its discretion to remand, a court must determine whether or not state law issues predominate in any or all removed claims.[9] On this point, the complete preemption doctrine is significant to the determination whether state law issues predominate in Counts I–IV. Manifestly, state law issues cannot predominate where state law is displaced by federal law under the complete preemption doctrine, that is, where state law claims are effectively federalized. In this event, remand under § 1441(c) would be impermissible. Here, therefore, it is important · to determine whether some or all of Counts I–IV are completely preempted by ERISA.

As noted, complete preemption occurs where Congress so completely preempts a particular body of law that a state law claim invoking that area of law is, in sum and substance, converted into a federal claim for purposes of the "well-pleaded complaint" rule. See Taylor, 481 U.S. at 63–64, 107 S.Ct. at 1546–47; Caterpillar Inc., 482 U.S. at 393–94, 107 S.Ct. at 2430; Franchise Tax Bd., 463 U.S. at 23–24, 103 S.Ct. at 2853–54; Childers, 881 F.2d at 1261. Defendants rely on the Supreme Court's ruling in Taylor, 481 U.S. at 58, 107 S.Ct. at 1542, for the proposition that plaintiffs' claims are completely preempted. In Taylor, a beneficiary of an employee benefit plan sued under state common law to recover benefits from the plan. The Supreme Court held that ERISA preempted the state law claim. 481 U.S. at 62–63, 107 S.Ct. at 1546. In reaching this conclusion, the Court found that the state law claim fell directly within the civil enforcement provision of ERISA, 29 U.S.C. § 1132, and

---

**8.** In their supplemental brief, plaintiffs suggest, without evident conviction, that they might have ERISA standing under the narrow set of cases granting such standing to parties not enumerated in 29 U.S.C. § 1132(a). See Fentron Indus., Inc. v. Nat'l Shopmen Pension Fund, 674 F.2d 1300 (9th Cir.1982) (permitting contributing employer to sue pension fund); Peoria Union Stock Yards Co. Retirement Plan v. Penn. Mut. Life Ins. Co., 698 F.2d 320 (7th Cir.1983) (granting ERISA standing to pension fund); Michigan United Food & Commercial Workers Union v. Baerwaldt, 767 F.2d 308 (6th Cir.1985) (same), cert. denied, 474 U.S. 1059, 106 S.Ct. 801 (1986). But contrasting these cases with others denying ERISA standing to non-enumerated parties demonstrates persuasively that plaintiffs, as minority shareholders suing on their own behalf and derivatively on behalf of ASC, plainly fall outside the narrow class of non-enumerated parties that some courts have permitted to sue under ERISA. See Hermann Hosp. v. MEBA Medical & Benefits Plan, 845 F.2d 1286 (5th Cir.1988) (hospital had no ERISA standing); Pressroom Unions—Printers League Income Sec. Fund v. Continental Assur. Co., 700 F.2d 889 (2nd Cir.) (no ERISA standing for pension fund), cert. denied, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983); Northeast Dept. ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund, 764 F.2d 147 (3rd Cir.1985) (same); Cameron Manor, Inc. v. United Mine Workers of Am., 575 F.Supp. 1243 (W.D.Pa.1983) (no ERISA standing for health care provider).

**9.** In their reply brief, defendants argue that remand under § 1441(c) is inapplicable here. They assert that § 1441(c) does not pertain to this case because plaintiffs' claims are not "separate and independent" claims or causes of action. This argument is unpersuasive in light of the fact that defendants elected to remove this case under both § 1441(b) and § 1441(c). Having relied on § 1441(c) for removal, they cannot now disavow its grant of remand power. More importantly, because Counts I–IV are not removable for reasons elaborated elsewhere in this opinion, plaintiffs have joined "one or more otherwise nonremovable claims or causes of action" to the ERISA claim in Count V, which is clearly "a separate and independent claim or cause of action" arising under federal law, within the express requirements of § 1441(c). See 28 U.S.C. § 1441(c).

was therefore completely preempted because it was the "clear intention of Congress to make [29 U.S.C. § 1132] suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction." 481 U.S. at 66, 107 S.Ct. at 1547. Yet *Taylor* is not apposite here, for the instant plaintiffs are not participants or beneficiaries within the ERISA civil enforcement provision, 29 U.S.C. § 1132. Congress has not provided an ERISA remedy for minority shareholders suing in their capacity as shareholders or derivatively on behalf of the corporation.[10] Thus, plaintiffs' claims here are not completely preempted under the principle announced in *Taylor*. Seeking to avoid this result, defendants contend that complete preemption under ERISA need not be premised on the availability of a federal remedy under § 1132. Instead, they urge that occupation of the substantive area of law, without more, should suffice to establish complete preemption. This cannot be. Occupation of the substantive area of law is but another way of saying that a state law claim is subject to a preemption defense. And such a defense, by itself, does not convert a state claim into an action arising under federal law. *See Taylor*, 481 U.S. at 64, 107 S.Ct. at 1547; *Franchise Tax Bd.*, 463 U.S. at 25–27, 103 S.Ct. at 2854–56. Were this not so, all arguably preempted state law claims would be removable under § 1441, meaning, in effect, that in cases implicating preemption, the complete preemption doctrine would swallow the "well-pleaded complaint" rule. No court has so held. On the contrary, it is settled law that a preemption defense to a state law claim, without more, is not enough to sustain removal jurisdiction. *See Taylor*, 481 U.S. at 63, 107 S.Ct. at 1546; *Caterpillar Inc.*, 482 U.S. at 393, 107 S.Ct. at 2430; *Franchise Tax Bd.*, 463 U.S.

at 14, 103 S.Ct. at 2848; *Childers*, 881 F.2d at 1261. Thus, complete preemption cannot be based merely on federal occupation of the pertinent area of law; it requires more. *See Taylor*, 481 U.S. at 65–66, 107 S.Ct. at 1547.

Given that complete preemption does not obtain here, the next question is whether, as defendants contend, the applicability of general ERISA preemption precludes a finding that state law issues predominate in Counts I–IV. The touchstone of the preemption analysis is congressional intent. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909–10, 85 L.Ed.2d 206 (1985) ("The question whether a certain state action is pre-empted by federal law is one of congressional intent."); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S.Ct. 2890, 2899, 103 S.Ct. 2890 (1983) (same). "To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, ——, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990). ERISA is a comprehensive statute intended to promote the interests of employees and their beneficiaries in employee benefit plans. *See Ingersoll–Rand*, 498 U.S. at ——, 111 S.Ct. at 482; *Shaw*, 463 U.S. at 90, 103 S.Ct. at 2896; *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361–62, 100 S.Ct. 1723, 1726–27, 64 L.Ed.2d 354 (1980). ERISA imposes participation, funding, and vesting requirements on pension plans and establishes standards for reporting, disclosure, and plan fiduciary responsibility. *See* 29 U.S.C. § 1001 *et seq.; Shaw*, 463 U.S. at 90–91, 103 S.Ct. at 2896. To secure federal control over ERISA plans, Congress provided for federal preemption of "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). *See also Ol-*

---

**10.** Of course, the absence of a federal remedy does not preclude a valid preemption defense. *See, e.g., Lee v. E.I. DuPont de Nemours and Co.,* 894 F.2d 755, 756–57 (5th Cir.1990) (former plan participants' state claims preempted even though no remedy available under ERISA). Significantly, however, the inquiry into the viability of federal preemption as a defense is not co-extensive with the inquiry into complete pre-

emption. *See Taylor,* 481 U.S. at 60, 107 S.Ct. at 1544 ("The question presented by this litigation is whether these state common law claims are not only pre-empted by ERISA, but also displaced by ERISA's civil enforcement provision ... to the extent that complaints filed in state courts purporting to plead such state common law causes of action are removable to federal court under 28 U.S.C. § 1441(b).").

*son v. General Dynamics Corp.*, 951 F.2d 1123, 1125 (9th Cir.1991) ("[T]his pre-emption clause is 'deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern.'") (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39). In the context of § 1144(a), "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2900. In *Shaw* and elsewhere, the Supreme Court has consistently acknowledged the broad scope of ERISA preemption. *See, e.g., Ingersoll–Rand*, 498 U.S. at ——, 111 S.Ct. at 482; *FMC Corp. v. Holliday*, 498 U.S. 52, ——, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990); *Pilot Life Ins. Co.*, 481 U.S. at 46, 107 S.Ct. at 1552. *See also Olson*, 951 F.2d at 1125; *Pizlo v. Bethlehem Steel Corporation*, 884 F.2d 116, 120 (4th Cir.1989). Accordingly, ERISA preemption has not been limited to state laws specifically designed to affect employee benefit plans. *See Shaw*, 463 U.S. at 98–99, 103 S.Ct. at 2900–01 (ERISA preempted New York's Human Rights Law and Disability Benefits Law because it "related to" an employee benefit plan within the meaning of § 1144(a)).

The expansiveness of § 1144(a) notwithstanding, ERISA preemption plainly has limits. As the Supreme Court has clearly stated, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. *See also, e.g., Ingersoll–Rand*, 498 U.S. at ——, 111 S.Ct. at 483 (recognizing limits on the ERISA preemption clause); *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 841, 108 S.Ct. 2182, 2191, 100 L.Ed.2d 836 (1988) (ERISA did not preempt a state's general garnishment statute, even though applied to collect judgments against plan participants); *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 12, 107 S.Ct. 2211, 2217–18, 96 L.Ed.2d 1 (1987) (state law requiring payment of severance benefits not preempted because statute did not require the establishment or maintenance of a benefit plan).[11] Cases addressing ERISA preemption in light of the "too tenuous, remote, or peripheral" limitation articulated in *Shaw* suggest three guiding principles for applying ERISA preemption. First, state laws involving the exercise of traditional state authority are less likely to be preempted than state laws regulating areas not traditionally left to the states.[12] Second, a state law is more likely to relate to a benefit plan, and thus be preempted, if it affects relations among principal ERISA entities (the employer, the plan, the plan

**11.** ERISA itself limits the scope of ERISA preemption in ways not implicated in this case. For example, § 1144(a) does not apply to state laws regulating insurance, banking, or securities, 29 U.S.C. § 1144(b)(2)(A), nor does it apply to state criminal laws of general application. 29 U.S.C. § 1144(b)(4).

**12.** *See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1467 (5th Cir.1986) (noting cases that treat state laws regulating traditional areas of state authority as less likely to be preempted, but expressing hesitation about using this principle as a determinative factor), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 *and* 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987); *Rebaldo v. Cuomo*, 749 F.2d 133, 138 (2nd Cir. 1984) (state scheme enacted to contain hospital costs under medicaid and medicare not preempted by ERISA because "[a] preemption provision designed to prevent state interference with federal control of ERISA plans does not require the creation of a fully insulated legal world that excludes these plans from regulation of any purely local transaction"), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985); *American Tel. & Tel. Co. v. Merry*, 592 F.2d 118, 122 (2nd Cir.1979) (spousal support garnishment statute not preempted by ERISA because the action involved the "ancient family law right of maintenance" that had long been the province of state courts); *Authier v. Ginsberg*, 757 F.2d 796, 800 n. 6 (6th Cir.) (ERISA preempted state claim for discharge in violation of public policy based on fiduciaries' alleged compliance with ERISA; *Merry* distinguished on the ground that unlike domestic relations, employer—employee relations were not solely a concern of the states), *cert. denied*, 474 U.S. 888, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985). *But cf. Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320, 327 (2nd Cir.1985) (traditional state police power preempted unless it affects benefit plans in a tenuous, remote, or peripheral manner), *aff'd*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986).

fiduciaries, and the beneficiaries). When it affects relations among principal ERISA entities and an outside party, or between two outside parties, a state law is less likely to be preempted.[13] Third, preemption is less likely to occur where the effect of a state law of general application on an ERISA-covered plan is merely incidental.[14] *See generally Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550 (6th Cir.1987) (using these three principles as standard for evaluating ERISA preemption).

These guiding principles applied here point persuasively to the conclusion that Counts I–IV of plaintiffs' complaint are not preempted by ERISA. First, law governing corporations is quintessentially the province of traditional state authority. *See, e.g., Burks v. Lasker*, 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979) (corporations are creatures of state law, governed by state law); *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977) (same). More importantly, neither plaintiffs nor Curran and Ramsey are principal ERISA entities; the dispute between them only incidentally implicates an ERISA plan. On this point, the Fifth Circuit decision in *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1467 (5th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 *and* 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987), is instructive. There, an employee profit-sharing trust, in its capacity as the employer corporation's minority shareholder, sued the corporation and its principal shareholder and director alleg-

ing a breach of a state common law fiduciary duty owed to the minority shareholder. The Fifth Circuit's preemption analysis focused on the state law's effect on the relations between the parties. The panel found that the state law duties owed by a principal shareholder and director to a minority shareholder were separate and independent from any ERISA duties owed by a plan fiduciary to a plan and its beneficiaries, even where the same individual served as principal shareholder, director, and plan fiduciary. In reaching this result, the panel made the following instructive remarks:

The state common law of fiduciary duty that the Trust seeks to invoke in this case centers upon the relation between corporate director and shareholder. The director's duty arises from this status as director; the law imposes the duty upon him in that capacity only. Similarly, the shareholder's rights against the corporate director arise solely form his status as shareholder. That in a case such as ours the director happens also to be a plan fiduciary and the shareholder a benefit plan has nothing to do with the duty owed by the director to the shareholder. The state law and ERISA duties are parallel but independent: as director, the individual owes a duty, defined by state law, to the corporation's shareholders, including the plan; as fiduciary, the individual owes a duty, defined by ERISA, to the plan and its beneficiaries. Thus, the state law does not affect relations between the ERISA fiduciary and the plan or plan benefi-

**13.** *See Pilot Life Ins. Co.*, 481 U.S. at 52, 107 S.Ct. at 1555 (29 U.S.C. § 1132 is the exclusive remedy for plan participants and beneficiaries); *Taylor*, 481 U.S. at 66, 107 S.Ct. at 1547 (same); *Sommers Drug Stores*, 793 F.2d at 1467 (relying chiefly on this principle in holding certain state corporate laws not preempted). *Compare Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (state mental health benefits law affecting relations between plan and beneficiaries preempted) *and Shaw*, 463 U.S. at 96–100, 103 S.Ct. at 2899–2902 (state statute requiring plan to provide pregnancy benefits preempted) *with Rebaldo*, 749 F.2d at 138–39 (state hospital cost statute affecting relations between pension plans and hospitals not preempted) *and Lane v. Goren*, 743 F.2d

1337, 1340–41 (9th Cir.1984) (state anti-discrimination statute affecting relations between a company in its capacity as an employer and employees not preempted).

**14.** *See Sommers Drug Stores*, 793 F.2d at 1470; *Planned Consumer Marketing, Inc. v. Coats and Clark, Inc.*, 71 N.Y.2d 442, 527 N.Y.S.2d 185, 522 N.E.2d 30 (N.Y.1988) (claim for violation of state laws prohibiting fraudulent conveyances not preempted); *Smith v. Crowder Jr. Co.*, 280 Pa.Super. 626, 640, 421 A.2d 1107, 1115 (Pa.Super.Ct.1980) (state law claim by minority shareholder and corporation that defendants unlawfully recapitalized the corporation not preempted).

ciaries as such; it affects them in their separate capacities as corporate director and shareholder.

793 F.2d at 1468. The Court further found that the state law would rarely, if ever, impose conflicting or inconsistent duties on directors who are also plan fiduciaries. 793 F.2d at 1468–69, 1470. In those rare situations where a conflict occurred, the panel reasoned that the director might simply have to resign one of his conflicting positions. 793 F.2d at 1469. Thus, the Fifth Circuit panel concluded that the state common law of corporate fiduciary duty was a law of general application that affected the benefit plan in too tenuous, remote, and peripheral a manner to trigger ERISA preemption. 793 F.2d at 1470.[15]

More recently, in *Ingersoll–Rand*, 498 U.S. at ——, 111 S.Ct. at 478, the Supreme Court ruled that ERISA preempted an employee's state law wrongful discharge claim based on an allegation that the employer fired the employee to avoid making contributions to the employee's pension fund. ERISA preemption was held to apply in that context because the existence of an ERISA plan was a "critical factor" in establishing liability under the plaintiff's theory of the tort. 498 U.S. at ——, 111 S.Ct. at 483. The Court distinguished its case from a case involving only incidental effects on ERISA plans: "We are not dealing here with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan." 498 U.S. at ——, 111 S.Ct. at 483. *Cf. Lee v. E.I. DuPont de Nemours and Co.*, 894 F.2d 755, 757 (5th Cir. 1990) (state law claims for fraud and negligent misrepresentations directly connected to benefits explicitly defined by an ERISA plan preempted). Here, in contrast to *Ingersoll–Rand* and *Lee*, the existence of an

ERISA plan is not essential to establish liability under Counts I–IV of the complaint. Given this, defendants' reliance on these decisions is misplaced.

■ The state corporate laws of fiduciary responsibility invoked by plaintiffs (assuming *arguendo* the viability of an equal opportunity claim in Virginia) regulate relations between plaintiffs, as minority shareholders; ASC, as the corporation; and Ramsey and Curran, as controlling shareholders, officers, and directors. The relations between these parties, acting in these capacities, function irrespective of ASC ESOT, its management, or its administration. *See, e.g., Ingersoll–Rand*, 498 U.S. at ——, 111 S.Ct. at 483; *Sommers Drug Stores*, 793 F.2d at 1468. State laws governing corporate fiduciary duties neither forbid nor permit any particular method of administering or funding an employee benefit plan or calculating plan benefits. *See Pizlo*, 884 F.2d at 120 (breach of contract, promissory estoppel, and negligent misrepresentation claims not preempted by ERISA, because in the context of the case the state law claims would not subject employers to conflicting obligations, nor would they directly affect the administration of plan benefits); *Planned Consumer Marketing, Inc. v. Coats and Clark, Inc.*, 71 N.Y.2d 442, 450, 527 N.Y.S.2d 185, 190, 522 N.E.2d 30, 35 (N.Y.1988) (finding state fraudulent conveyance laws not preempted despite fact that conveyances were directed to an ERISA fund). Simply because events precipitating plaintiffs' state law causes of action occurred in the general context of an employee benefit plan does not create a nexus with ERISA sufficient to trigger preemption.

Defendants urge that permitting plaintiffs to enforce independent state law

---

**15.** Similarly, in *Smith v. Crowder Jr., Co.*, 280 Pa.Super. 626, 421 A.2d 1107 (Pa.Super.Ct.1980), a minority shareholder and corporation sued officers, directors, and controlling shareholders for unlawfully recapitalizing the corporation. The court ruled that ERISA preemption did not apply because the plaintiff's claim could be established "regardless of the soundness or unsoundness of the Plan and Trust, of their management and administration." 280 Pa.Super. at 637, 421 A.2d at 1113. As the court explained: "ERISA was not intended as a device

to permit corporate directors and officers to defraud with impunity corporate shareholders and creditors by funneling the corporation's assets into an employee benefit trust. We are therefore reluctant to accept appellants' contention that Congress meant to abrogate traditional state remedies for the protection of shareholders and creditors against corporate mismanagement and fraud in the absence of federal remedies replacing them." 280 Pa.Super. at 639, 421 A.2d at 1114.

duties would disrupt the uniformity intended by Congress when it made pension plans the province of the federal courts. It is undisputed that the purpose of ERISA preemption is "to ensure that plans and plan sponsors would be subject to a uniform body of benefit law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government. Otherwise, the inefficiencies created could work to the detriment of plan beneficiaries." *Ingersoll–Rand*, 498 U.S. at ——, 111 S.Ct. at 484. *See also FMC Corp.*, 498 U.S. at ——, 111 S.Ct. at 408; *Shaw*, 463 U.S. at 105 n. 25, 103 S.Ct. at 2904 n. 25. Yet application of state corporate law will not force ERISA plans or ERISA entities to comply with conflicting directives among states, even where ERISA entities serve in "parallel but independent" corporate capacities. *See Sommers Drug Stores*, 793 F.2d at 1468. The standard of conduct of a controlling shareholder, director, or officer with respect to the corporation and its minority shareholders is governed only by the law of the state of incorporation, not by the laws of the several states in which the corporation conducts business or maintains employees. Accordingly, for all of the reasons stated here, Counts I–IV of plaintiffs' complaint are not preempted by ERISA.

Absent both complete preemption and general ERISA preemption under § 1144(a), it is pellucidly clear that state law issues predominate in Counts I–IV of plaintiffs' complaint. The Court therefore elects to exercise its discretion under § 1441(c) to remand those counts to the Circuit Court of Fairfax County, Virginia.[16]

### IV. *The State Law Component of Count V*

■ Preemption principles elaborated here compel the conclusion that the state law claims of Count V are preempted by ERISA. A state law claim brought against defendant Artabane in his capacity as trustee of ASC ESOT unquestionably relates to an employee benefit plan under ERISA. So, too, does the relief sought in Count V: disestablishment of ASC ESOT. Neither the claim, nor the relief, can be said to be too tenuously, remotely, or peripherally connected to ASC ESOT, as an ERISA plan, to withstand ERISA preemption. Thus, as a matter of law, plaintiffs cannot sustain their state law claims in Count V. Accordingly, these claims must be dismissed with prejudice.

### CONCLUSION

In sum, the Court holds that Count V of plaintiffs' complaint states, in part, a cause of action arising under ERISA. Consequently, removal of the entire case to federal court was proper under 28 U.S.C. § 1441. The ERISA element of Count V should be dismissed with prejudice because these plaintiffs lack standing to sue under ERISA. *See* 29 U.S.C. § 1132. The state law component of Count V is preempted by ERISA pursuant to 29 U.S.C. § 1144(a) and should therefore be dismissed with prejudice. Counts I–IV, however, are not preempted by ERISA. Moreover, within those counts, state law issues predominate. Accordingly, Counts I–IV are remanded to the Circuit Court of Fairfax County, Virginia, pursuant to 28 U.S.C. § 1441(c).[17]

An appropriate Order will issue.

---

**16.** Alternatively, the Court could dismiss Counts I–IV without prejudice under *United Mine Workers*, 383 U.S. at 725–27, 86 S.Ct. at 1138–39. Yet remand is more appropriate in the circumstances at bar because "remand is more direct, less costly, and more protective in other ways to the plaintiff who originally chose the state forum." *Fox v. Custis*, 712 F.2d 84, 89 n. 4 (4th Cir.1983). Moreover, in removed cases remand is tantamount to dismissal without prejudice so far as any discernible federal interest is concerned. *Id.*

**17.** Given the Court's rulings, it need not, and does not, reach the shareholder ratification issue raised in the parties' pleadings, nor does it

address ASC's request to be made a party-defendant. Resolution of these, and other matters, is left to the state court.