**Evelyn HUNTER, Petitioner,**

v.

**AMERITECH, Respondent.**

**Evelyn HUNTER, Plaintiff and Counterdefendant,**

v.

**AMERITECH CORPORATION, etc., et al., Defendants and Counterplaintiffs.**

**No. 91 C 5378.**

United States District Court, N.D. Illinois, E.D.

Nov. 15, 1991.

Joseph Cardinal, Evergreen Park, Ill., for Evelyn Hunter.

Francine Stewart Solivnas, Paul Whitsitt, Chicago, Ill., for Ameritech.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In late August of this year Ameritech Corporation ("Ameritech") removed this action from the Circuit Court of Cook County to this District Court on the premise that the injection of Ameritech into the marital dissolution proceeding between petitioner Evelyn Hunter ("Evelyn") and her now-deceased ex-husband Hame Hunter ("Hame")—who had been an employee of Ameritech during his lifetime—necessarily implicated the Employee Retirement Income Security Act of 1974 ("ERISA") and the Retirement Equity Act of 1984 ("REA"). That, says Ameritech, makes this a federal-question case ripe for such removal.

After Ameritech Pension Plan ("Plan") had intervened as a defendant and then

joined Ameritech in filing a counterclaim against Evelyn for declaratory relief, Evelyn moved to remand the case to the state court.[1] Then after Ameritech and Plan had filed their memorandum in opposition to the remand motion but before Evelyn had filed her reply memorandum, Judge Bua left the bench to return to the practice of law, and the case was randomly assigned to this Court's calendar. Now the reply memorandum has been filed and the issue is ripe for decision.[2]

### Facts

Evelyn's current venture into the Circuit Court—more precisely a return to the County Department, Domestic Relations Division of that court—was not by way of a new lawsuit, but rather via her filing of a petition in the original 1984 dissolution-of-marriage case (84 D 10843) in which she sought entry of a qualified domestic relations order ("QDRO"). Her Petition ¶ 3 set out that the Decree for Dissolution of Marriage that had been entered July 14, 1988 had included this provision:

> Evelyn will be awarded an interest in Hame's pension with Ameritech of 50 percent of the interest as of the date of dissolution and a QDRO will be entered with Ameritech.

Despite that express provision, no QDRO was in fact ever entered (Petition ¶ 5). At the time of his death (intestate) on September 28, 1990, Hame had never signed and executed any document necessary for that purpose (Petition ¶ 7). Evelyn concluded her Petition by asking the Circuit Court to grant this relief:

> 1. That a Qualified Domestic Relations Order previously ordered by this Court in the Dissolution of Marriage Judgment be ordered, entered, and effectuated.
>
> 2. That this Court Order whatever relief it deems just and equitable.

And of course she named Ameritech as a respondent for the obvious purpose of obtaining "effectuat[ion]" of the QDRO once it had been ordered and entered.

### Removability

As the "DRO" part of "QDRO" indicates, REA (which sought to correct a problem that had been created by ERISA's anti-alienation provision) authorized the assignment of ERISA benefits to be accomplished by a *state court* domestic relations order (29 U.S.C. § 1056(d)(3)[3]). Not surprisingly, given the identity of the only courts that could enter such orders (something that is confirmed not only by the express definition of the "DRO" in Section 1056(d)(3)(B)(ii) but by the historic refusal of federal courts to adjudicate domestic relations disputes[4]), Congress also simulta-

---

1. No bootstrap effect is to be given to the intervention by Plan and the subsequent counterclaim, because this Court's then colleague Honorable Nicholas Bua (to whom the case was then assigned) had granted leave for such intervention and counterclaim only in contemplation of Evelyn's having announced her intention to move for a remand. Indeed, leave to intervene and to file the counterclaim were actually granted at the very same time that Judge Bua established the time table for the filing and briefing of Evelyn's expected motion to remand.

2. Evelyn's just-filed reply memorandum sets out a great deal of factual information about the background of the underlying dissolution-of-marriage proceeding referred to in her Petition here and described briefly in the *Facts* section of this opinion. But it is conventional wisdom that neither pleadings nor proof may be amended or supplemented by what is said in lawyers' memoranda (*Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984))—and this situation is no exception to that. This opinion has therefore taken no account of those extra-record assertions, limiting itself instead to the actual pleadings and what they demonstrate about this Court's subject matter jurisdiction—or in this instance the absence of jurisdiction. In that respect Evelyn's reply memorandum—six pages of discussion that neither cite a single case nor deal with the relevant legal concepts—has regrettably been of no assistance at all. Full responsibility for what is reflected here must therefore be laid at this Court's door.

3. All further references to Title 29, which encompasses both ERISA and REA, will simply take the form "Section —."

4. That refusal has manifested itself in a steadfast rejection of jurisdiction over such matters by judicial fiat even though all the normal requirements for federal jurisdiction (usually diversity of citizenship) are unquestionably satisfied. See the extended discussion and case citations in 13 B Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice & Procedure:*

neously and expressly amended ERISA to exempt QDROs from the normally expansive preemptive effect of ERISA as exemplified in such cases as *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46–48, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987) and *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–67, 107 S.Ct. 1542, 1546–48, 95 L.Ed.2d 55 (1987)—the latter case speaking to the preemption issue in the context of removal. Then-newly-added Section 1144(b)(7) provides:

> Subsection (a) [the provision of Section 1144(a) that has been construed by the Supreme Court in the just-cited cases as mandating ERISA's total preemption of state laws relating to employee benefit plans] shall not apply to qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title).

■ This Court of course has no power to issue a QDRO itself, and it cannot be known whether Ameritech will or will not become subject to one unless and until the only court having jurisdiction to do so—the Circuit Court of Cook County—decides that question. In turn that decision can well be a function of matters entirely within the purview of the domestic relations case (to say nothing of purely state law factors having to do with the effect of Hame's death [5]). At this point it is undeniable that the issue sought to be tendered to this Court by Ameritech and Plan is no more than hypothetical: *If* the Circuit Court of Cook County were to enter a QDRO, would Ameritech and Plan be bound to recognize it?

■ Stripped of the verbiage employed by Ameritech and Plan in their responsive memorandum, a serious question might thus be raised in Article III terms as to whether such a hypothetical inquiry really represents a "case or controversy"—something that is essential to federal court jurisdiction to begin with. But that question need not be answered, because it is crystal-clear in any event that *this* Court lacks the jurisdiction to grant the relief (and hence to decide the issue) that is posed by Evelyn's Petition: the actual *issuance* of a QDRO.[6]

That being so, "it appears that the district court lacks subject matter jurisdiction" (28 U.S.C. § 1447(c)). In that circumstance the just-cited statute mandates a remand. In accordance with this District Court's General Rule 30(b), this Court directs that the certified copy of the remand order shall be mailed forthwith rather than its being delayed for a period up to 14 days—this case has lingered here without any substantive proceedings quite long enough.

*Jurisdiction 2d* § 3609 (2d ed. 1984 and 1991 pocket part)—the main volume treatment of which extends over more than 20 pages, almost all of which have only a few lines of text dwarfed by extensive case citations and analyses.

**5.** That latter prospect could well embroil this federal court in the other area that is the subject of a judicially-created exception to federal subject matter jurisdiction: that involving probate matters (see 13 B Wright, Miller & Cooper § 3610, as to which the treatment in the original volume encompasses more than 25 pages made up in much the same way as the preceding section described in n. 3 of this opinion).

**6.** It may well be that the Petition is insufficient in its original form to enable the Circuit Court to act—that Evelyn's counsel ought to join Hame's personal representative as a respondent in the Domestic Relations Division, or perhaps ought to bring the proceeding in the Probate Division. But any such questions about the sufficiency of the present Petition in terms of Illinois state law or procedure (even if they were questions, as they are not, that bear upon the Circuit Court's powers as a court of general jurisdiction) cannot of course transmute this Court's *lack* of subject matter jurisdiction into the *existence* of such jurisdiction. "Nature abhors a vacuum" was not written by Spinoza (*Ethics* part 1, proposition 15) in a treatise on federal jurisdiction.