Ottis J. SCHRADER, On His Own Behalf and Derivatively On Behalf of Nominal Defendant Atlantic Richfield Company, a Delaware corporation, Plaintiff,

v.

Beverly L. HAMILTON; and Does 1 Through 100, Defendants,

and

Atlantic Richfield Company, a Delaware corporation, Nominal Defendant.

No. CV 96–4117 RAP.

United States District Court, C.D. California.

Feb. 4, 1997.

**1206**

Marc Seltzer, Corinblit & Seltzer, Los Angeles, CA, for Plaintiff.

John Brinsley, Lee Seltman, Paul, Hastings, Janofsky & Walker, Los Angeles, CA, for Beverly Hamilton.

Matthew Heartney, James Speyer, Steven Bergman, Arnold & Porter, Los Angeles, CA, for ARCO.

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

PAEZ, District Judge.

### I.

### *INTRODUCTION & FACTUAL BACKGROUND*

On May 13, 1996, plaintiff Ottis J. Schrader filed this shareholder's derivative action in the Los Angeles County Superior Court on behalf of Atlantic Richfield Co. ("ARCO") against defendant Beverly L. Hamilton, and nominal defendant ARCO. Hamilton, ARCO's Vice–President and Investment Officer and an administrator under the Employees Retirement and Income Security Act of 1974 ("ERISA"), allegedly made highly speculative investments and caused ARCO's Money Market Plus Benefit Plan (the "MMP Fund" or "MMP Plan"), an ERISA employee investment plan, to lose $22.3 million. ARCO reimbursed the MMP Plan for the money it lost as a result of the bad investments, and Schrader filed this action to recover damages for the concomitant loss to shareholders. Schrader's complaint asserts a single cause of action against the defendants for breach of their corporate fiduciary duties. Defendants timely removed the case to federal court, alleging jurisdiction under ERISA. Defendants contend that plaintiff's state law claims are preempted by ERISA.

The MMP Fund was marketed as a highly conservative investment vehicle with a stated goal of providing security to the fund's principal and liquidity. Schrader alleges that in 1983 and 1984 Hamilton invested $55 million of the MMP Fund in highly speculative derivative securities. The value of these securities eventually dropped, resulting in the MMP Fund's ultimate loss of approximately $22.3 million.

Subsequent to the MMP Fund's loss, the Department of Labor ("DOL") initiated an investigation of ARCO's management of the MMP Fund. Schrader alleges that the DOL issued a written report on October 31, 1994, finding that defendants Hamilton and ARCO were liable for breach of fiduciary duty under ERISA for allowing the highly speculative investments. In response to the DOL report, ARCO acknowledged its liability and agreed to take $22.3 million from the corporate treasury to replenish the MMP.[1]

Schrader then brought this shareholder's derivative action, claiming that by allowing principal-at-risk investments of the MMP Plan funds, Hamilton breached the fiduciary duties she owed to ARCO and its shareholders as a corporate officer. Schrader now requests that the Court remand this action to

---

**1.** The parties disagree about the nature of ARCO's liability. Defendants claim that ARCO breached its ERISA fiduciary duty by allowing Hamilton to invest money in highly speculative securities. Initially, plaintiff alleged that ARCO breached its ERISA fiduciary duties and acknowledged liability. However, plaintiff now contends that his allegation regarding ARCO's acknowledgement of liability referred to ARCO's vicarious liability for Hamilton's breach of her fiduciary duties to the MMP Fund participants.

the superior court, arguing that Hamilton's corporate fiduciary duty was separate and independent from her ERISA fiduciary duty. Schrader contends that because the two duties are separate, the corporate fiduciary duty claim is not related to ERISA and, consequently, is not preempted. In addition, Schrader argues that ERISA does not preempt this action because, as a shareholder, he is not an enumerated party authorized to bring an ERISA claim. The defendants oppose remand, contending that Schrader's state law claim is preempted by ERISA because: (1) it relates to the ERISA Plan; and (2) Schrader is acting on behalf of ARCO and, accordingly, has standing to bring an ERISA claim.[2]

Defendants move to dismiss the action under Fed.R.Civ.P. 12(b)(6), arguing that (1) Schrader's state law claims are preempted, and he has no remedy under the ERISA statute; and (2) Schrader failed to demand that ARCO's Board of Directors reimburse the shareholders before initiating his shareholder's derivative suit.

At the hearing on the parties' motions, the Court tentatively indicated that remand to state court was not warranted because it appeared that plaintiff's claim was preempted by ERISA. However, upon further consideration of the parties' arguments and the relevant authorities, augmented by the parties' supplemental briefing, the Court has concluded that plaintiff lacks standing to maintain a claim for relief under ERISA. Plaintiff is not one of the enumerated parties authorized to bring an ERISA claim. The fact that plaintiff's suit is brought derivatively on behalf of ARCO is not sufficient, in and of itself, to provide plaintiff standing to assert an ERISA claim. Allowing plaintiff's derivative action will not further ERISA's goals, and, accordingly, plaintiff lacks standing to assert an ERISA claim against defendants. Consequently, Schrader's state law cause of action is not preempted by ERISA, this Court lacks federal subject matter jurisdiction over plaintiff's claim, and the action is properly remanded to state court. Accord-

ingly, the Court does not reach defendants' motion to dismiss.

## II.

### *MOTION TO REMAND*

A. *Legal Standard*

A case must be remanded to state court if the district court lacks subject matter jurisdiction. Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PROC. BEFORE TRIAL (The Rutter Group 1996) § 2:1084 [hereinafter Schwarzer]. Where jurisdiction is not premised on diversity and none of the claims asserted "arise under" federal law, the district court lacks subject matter jurisdiction and must remand the action to state court. Schwarzer, § 2:1085. A motion to remand for lack of subject matter jurisdiction can be raised at any time before final judgment. 28 U.S.C. § 1441(c); Fed.R.Civ.P. 12(h)(3).

To determine whether a case arises under federal law for purposes of establishing federal question subject matter jurisdiction, courts apply the "well-pleaded complaint" rule, which allows a plaintiff to avoid federal jurisdiction by relying exclusively on state law. *Caterpillar Inc., v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). "Federal courts consider only what *necessarily* appears in plaintiff's statement of his or her claim, *unaided by anything alleged in anticipation or avoidance of defenses* the defendant may interpose." Schwarzer, § 2:116; *see also Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 809, 108 S.Ct. 2166, 2174, 100 L.Ed.2d 811 (1988) (holding that even where defense is only question truly at issue, case raising federal patent law defense does not, for that reason alone, arise under patent law). In general, federal subject matter jurisdiction does not exist when the only federal question presented is raised as a defense, even where that defense alleges federal preemption of state law. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 12, 103 S.Ct. 2841, 2847–48, 77 L.Ed.2d 420

---

**2.** ARCO is a fiduciary of the plan, and thus is an enumerated party entitled to bring an action under 29 U.S.C. § 1132(a).

(1983) (*FTB* ), *superseded by statute on other grounds as stated in, Ethridge v. Harbor House Restaurant,* 861 F.2d 1389 (9th Cir. 1988).

However, certain federal laws completely preempt state law, creating an exception to the well-pleaded complaint rule. A federal statute's preemptive force may be so extraordinary that it is said to occupy the field of law, barring assertion of state law claims and permitting removal based on the preemptive effect of the federal statute. *Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2430.

**B. *ERISA Completely Preempts State Law***

ERISA imposes participation, funding and vesting requirements on employee investment and benefit plans and allocates fiduciary responsibility and liability for management of such plans. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). Congress sought to achieve two goals in enacting ERISA: (1) to protect plans and beneficiaries, and (2) to encourage employers to create and maintain benefit plans for their employees. *Varity Corp. v. Howe,* —— U.S. ——, ——, 116 S.Ct. 1065, 1078, 134 L.Ed.2d 130 (1996). Congress determined that these goals would be best served by establishing exclusive federal regulation, and ERISA therefore bars all state claims bearing on employee retirement plans unless they are protected by the savings clause of the statute.[3] *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–49, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987), *superseded by statute on other grounds as stated in, Hunter v. Ameritech,* 779 F.Supp. 419, 420 (N.D.Ill.1991); Schwarzer, § 2:768. ERISA preemption is "deliberately expansive, and designed to es-

tablish pension plan regulation as exclusively a federal concern." *Pilot Life,* 481 U.S. at 46, 107 S.Ct. at 1552; *see also New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 651–52, 115 S.Ct. 1671, 1675, 131 L.Ed.2d 695 (1995).

ERISA's supersedure provision states:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a) (emphasis added). Courts have read the "relate to" language of ERISA's supersedure provision broadly; a state law relates to a benefit plan if it has a connection with or reference to the plan. *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990), *abrogated on other grounds as stated in, Spinelli v. Gaughan,* 12 F.3d 853, 857 (9th Cir.1993) (citing *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 256–58, 113 S.Ct. 2063, 2069, 124 L.Ed.2d 161 (1993)). Thus, even though a suit facially asserts only state law claims, it may arise under ERISA. *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 67, 107 S.Ct. 1542, 1547–48, 95 L.Ed.2d 55 (1987), *superseded by statute on other grounds as stated in, Hunter v. Ameritech,* 779 F.Supp. 419 (N.D.Ill.1991). If a state law cause of action is preempted, it is recharacterized as a federal claim arising under federal law and is removable to federal court. *Metropolitan Life,* 481 U.S. at 66–68, 107 S.Ct. at 1548.[4]

---

**3.** The savings clause, 29 U.S.C. 1144(b)(2)(A), only protects from preemption those state laws that regulate insurance companies. That clause is not invoked in the present action.

**4.** Nonetheless, there is no single test for assessing whether a particular state law relates to an ERISA plan. Instead, the Ninth Circuit and the Supreme Court have set forth a number of tests, all of which are intended to further Congress' purposes in enacting ERISA.

For example, a claim does not relate to ERISA where preemption of the state law will impinge upon an area of law traditionally left to state

regulation. *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) ("We also must presume that Congress did not intend to preempt areas of traditional state regulation."); *Nieto v. Ecker,* 845 F.2d 868, 871–71 (9th Cir.1988) ("Absent an explicit directive from Congress, we may not recast [an attorney malpractice suit under state tort law] as a federal cause of action merely because [the] clients happened to be plans covered by ERISA."). The shareholder's derivative action before the Court is necessarily a creature of the law of corporations, which is traditionally an area of state regulation. Accord-

However, "there are limits to the unusually broad preemptive sweep we have afforded ERISA." *Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*, 96 F.3d 1310, 1317 (9th Cir.1996) (quoting *Concha v. London*, 62 F.3d 1493, 1505 (9th Cir.1995), *cert. dismissed, London v. Concha,* —— U.S. ——, 116 S.Ct. 1710, 134 L.Ed.2d 772 (1996)).[5]

Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to" the plan. [ ] For example, ERISA does not preempt state law claims if plaintiffs have no standing to challenge the ERISA violations. [ ] Similarly, if the plaintiff is not a participant, beneficiary, or fiduciary, then his [or her] state law claims fall. outside ERISA's sphere and are not subject to preemption. *Id.* (internal quotations and citations omitted). Thus, ERISA will not preempt Schrader's state law cause of action if he lacks standing to challenge the ERISA violations.[6]

ingly, in light of Congress' silence on the question of corporate state law claims, it appears that this Court may not be authorized to recast Schrader's shareholder's derivative action as a federal ERISA claim. However, because the Court ultimately concludes that Schrader lacks standing to assert an ERISA action on behalf of ARCO, the Court need not decide this issue.

In addition to the Supreme Court's guidelines, the Ninth Circuit has set forth the following test:

> The key to distinguishing between what ERISA preempts and what it does not lies, we believe, in recognizing that the statute *comprehensively regulates certain relationships:* for instance, the relationship between plan and plan member, between *plan and employer,* between employer and employee (to the extent a benefit plan is involved), and between plan and trustee.... Because of ERISA's explicit language ... and because state laws regulating these relationships (or the obligations flowing from these relationships) are particularly likely to interfere with ERISA's scheme, these laws are presumptively preempted.

*General American Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir.1993) (emphasis added). On the other hand, there is no evidence that Congress intended to comprehensively regulate relationships between entities protected by ERISA and third-parties. To the contrary, such a position would require federal courts "to invent a federal common law of contracts, torts, property, corporations—something that would run against the grain of our federal system." *Id.* at 1522.

> The very nature of the stockholder's derivative action makes it one in the regulation of which the legislature of a state has wide powers.... [I]nternal relations between management and stockholders are dependent upon state law and may be subject to most complete and penetrating regulation....

*Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949). If the Court were to conclude that Schrader's derivative action relates to ERISA, it would seemingly be required to invent a federal common law of corporations.

However, in determining whether an action relates to ERISA, the Ninth Circuit has also considered whether the conduct to which the state law is applied involves administration of an ERISA plan. *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1504 (9th Cir.1985). Thus, state laws that govern remedies for misconduct growing out of the administration of an ERISA plan are preempted. *Cox v. Eichler*, 765 F.Supp. 601 (N.D.Cal.1990). Here, plaintiff's action could be said to arise from misconduct in the administration of an ERISA plan. However, the attenuated nature of plaintiff's relationship to the ERISA plan seems to militate against facile application of the "administration," test. As noted above, however, because the Court ultimately concludes that Schrader lacks standing to assert an ERISA action on behalf of ARCO, the Court need not resolve this question.

5. . *See also FTB*, 463 U.S. at 25, 103 S.Ct. at 2854–55 (action to levy taxes against money held in an ERISA trust not preempted. because the State's right to enforce levies is not of central concern to the statute)

6. Other courts considering complete preemption cases have held that federal jurisdiction only exists where there is an available federal remedy. *Allstate Ins. Co. v. 65 Sec. Plan*, 879 F.2d 90 (3d Cir.1989) (emphasis added) (citing *FTB*, 463 U.S. 1, 103 S.Ct. 2841; *Richmond v. American Systems Corp.*, 792 F.Supp. 449, 456 (E.D.Va.1992)). To the extent that such a rule existed, it was abrogated in *Caterpillar*, where the Supreme Court stated that

> The nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy.... [T]he breadth or narrowness of the relief which may be granted under federal law ... is a distinct question from whether the court has jurisdiction over the parties and the subject matter.

*Caterpillar*, 482 U.S. at 391, n. 4, 107 S.Ct. at 2429, n. 4 (quoting *Avco Corp. v. Intern. Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 88. S.Ct. 1235, 20 L.Ed.2d 126 (1968)).

In addition, the Ninth Circuit has explicitly stated that an ERISA-related claim must be preempted even if the statute does not provide a remedy to the plaintiff. *Olson v. General Dynam-*

## B. *Standing to Sue under ERISA*

■ The ERISA statute enumerates four parties entitled to sue under ERISA: (1) the Secretary of Labor, (2) plan participants, (3) beneficiaries and (4) fiduciaries. 29 U.S.C. § 1132(a). The Supreme Court has held that non-enumerated parties may not bring an ERISA action. *FTB*, 463 U.S. at 26, 103 S.Ct. at 2855.[7]

In his individual capacity as an ARCO shareholder, Schrader does not come within any of these categories, and, therefore, he lacks standing to bring an ERISA claim on his own behalf. *See Richmond*, 792 F.Supp. at 454 (minority shareholders of a corporation lack standing to bring ERISA action against ERISA trustee). However, Schrader brought this action derivatively on behalf of ARCO, a Plan fiduciary.[8]

[T]he fundamental tenet of corporations law ... treats the corporate body as an entity—indeed, as a person, separate and distinct from those who own shares of its stock. It is this concept of separate identities which is the basis for distinguishing the rights, responsibilities, and immunities of shareholders for the rights and obligations of the corporation. It is this concept that reserves for the corporation the right to vindicate wrongs which harm the corporation, injuring the shareholders only

in the sense that stock values are imperiled.... [Nonetheless,] a shareholder of a corporation has standing to enforce rights of that corporation.

*Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir.1970). "The derivative form of action permits an individual shareholder to bring 'suit to enforce a corporate cause of action against officers, directors, and third parties.'" *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 95, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152 (1991).

Nonetheless, the fact that state law provides a means by which a shareholder may assert a corporate cause of action does not necessarily mean that the shareholder is entitled to standing under ERISA simply because the corporation is a fiduciary entitled to bring an ERISA action.

The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive.

*Pilot Life*, 481 U.S. at 54, 107 S.Ct. at 1556. This rationale also applies to the carefully circumscribed list of parties with standing to sue under ERISA. "If the plaintiff is not a participant, beneficiary, or fiduciary, then his

---

ics, Corp., 960 F.2d 1418, 1421–22 (9th Cir. 1991). Any remedial gap caused by application of the federal law is for Congress to address. *Id.* at 1422.

**7.** Although the Ninth Circuit held in *Fentron Industries, Inc. v. National Shopmen Pension Fund*, 674 F.2d 1300, 1305 (1982), that § 1132 is not an exclusive list of the parties empowered to sue under ERISA, *Fentron* has been resoundingly criticized by the Circuits, including several three-judge panels of the Ninth Circuit itself. *See Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261, 1264 (9th Cir.1992) (noting *Fentron* has been repudiated twice by the Supreme Court); *Pilkington v. Perelman*, 72 F.3d 1396, 1401 (9th Cir.1995) (same).

**8.** Although ARCO is an enumerated party, it is unclear whether ARCO has a remedy under ERISA. The Ninth Circuit has made it clear that an ERISA plan fiduciary may not sue a co-fiduciary for contribution. *Kim v. Fujikawa*, 871 F.2d 1427, 1432 (9th Cir.1989); *Call v. Sumitomo Bank*, 881 F.2d 626, 630 (9th Cir.1989), *but see Concha v. London*, 62 F.3d 1493, 1500 (9th

Cir.1995) (finding ERISA fiduciary had standing to sue co-fiduciary *on behalf of the plan* and noting that *Kim* and *Call* both involved breaching fiduciary plaintiffs). However, Schrader argues that ARCO is entitled to reimbursement under an indemnity theory. Neither the Supreme Court nor the Ninth Circuit has explicitly considered whether an ERISA plan fiduciary may maintain an action for indemnity against a co-fiduciary. Furthermore, lower courts have split on the issue. *Compare Moreland v. Behl*, No. C–92–1238 MHP, 1995 WL 150579 (N.D.Cal. Mar.22, 1995); *Glaziers and Glassworkers Union Local 252 Annuity Fund v. Newbridge Securities, Inc.*, 823 F.Supp. 1191 (E.D.Pa.1993); *Rossio v. Massachusetts Mutual Life Ins. Co.*, 789 F.Supp. 1047 (E.D.Cal.1992); and *Schloegel v. Boswell*, 766 F.Supp. 563 (S.D.Miss.1991) (holding a co-fiduciary has no right to indemnity under ERISA) *with Youngberg v. Bekins Co.*, 930 F.Supp. 1396, 1400 (E.D.Cal.1996) (relying on *Varity Corp. v. Howe*, —— U.S. ——, 116 S.Ct. 1065 (1996) and allowing an indemnity action). Although the Court sought additional post-hearing briefing on this issue, the Court need not resolve the issue at this time.

[or her] state law claims fall outside ERISA's sphere and are not subject to preemption." *Concha*, 62 F.3d at 1505.

Notwithstanding the rigid strictures of ERISA standing, in certain derivative actions in which the plaintiff acquires its rights from an enumerated party, the plaintiff may have standing to sue under ERISA. *See Misic v. Building Serv. Employees Health and Welfare Trust*, 789 F.2d 1374, 1378 (9th Cir. 1986); *Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir. 1988). In *Misic*, the Ninth Circuit concluded that a doctor, as an assignee for beneficiaries of an ERISA benefit plan, had standing to sue the trust derivatively on behalf of plan beneficiaries. *Misic*, 789 F.2d at 1378. The doctor in *Misic* provided dental services to the beneficiaries, and the beneficiaries assigned Dr. Misic their rights to reimbursement from the trust. *Id.* at 1375. When the doctor sued the trust to recover his fees, the trust argued that the doctor lacked standing to sue under ERISA. *Id.* at 1377. The *Misic* court disagreed, explaining,

> These arguments mistakenly treat Dr. Misic as a suitor in his own right. Dr. Misic sues derivatively, as assignee of beneficiaries .... Dr. Misic "stands in the shoes of the [b]eneficiaries;" and Dr. Misic's assignors, beneficiaries under the Act, are expressly authorized by section 1132(a)(1)(B) to sue to recover benefits due under a plan.

*Id.* at 1378.

The Fifth Circuit, citing *Misic* with approval, similarly held that health care benefits were assignable where a hospital that had provided care to a beneficiary of an ERISA-governed welfare benefit plan sued the plan on the beneficiary's behalf to recover payment. *Hermann Hosp.*, 845 F.2d at 1286, 1289. The court explained that allowing the hospital to sue derivatively furthered one of the main objectives of ERISA:

> To deny standing to health care providers as assignees of beneficiaries of ERISA plans might undermine Congress' goal of enhancing employees' health and welfare benefit coverage. Many providers seek assignments of benefits to avoid billing the beneficiary directly and upsetting his fi-

nances and to reduce the risk of nonpayment. If their status as assignees does not entitle them to federal standing against the plan, providers would either have to rely on the beneficiary to maintain an ERISA suit, or they would have to sue the beneficiary. Either alternative, indirect and uncertain as they are, would discourage providers from becoming assignees and possibly from helping beneficiaries who were unable to pay them "up-front."

*Id.* at 1290 n. 4.

In essence, the Fifth Circuit interpreted *Misic* as allowing derivative standing when it furthers one of ERISA's goals, i.e. protecting the plan and beneficiaries, or encouraging employers to create and maintain plans. *See Varity*, —— U.S. at ——, 116 S.Ct. at 1078. This analysis is persuasive because it simply tailors the "zone of interests" test articulated in *Association of Data Processing Serv. Org. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970), to the ERISA context. The *Data Processing* test asks "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute ... in question." *Id.* at 153, 90 S.Ct. at 830. Thus, the key inquiry in determining whether Schrader's derivative action is preempted by ERISA is whether allowing a shareholder to sue a corporation's co-fiduciary on behalf of the corporation furthers ERISA's goals, i.e., whether a shareholder in a corporation that is an ERISA fiduciary is within the zone of interest ERISA was intended to protect.

Schrader lacks standing to bring a derivative action under ERISA because he is not an enumerated party, as discussed above, and because allowing such a derivative action against ARCO's co-fiduciary will not further ERISA's purpose. As noted above, Congress sought to achieve two goals in enacting ERISA: (1) to protect plans and beneficiaries, and (2) to encourage employers to create and maintain benefit plans for their employees. *Varity*, —— U.S. at ——, 116 S.Ct. at 1078. There is no evidence that allowing the ARCO treasury to be reimbursed for money paid by the corporation to the Plan, and thereby indirectly benefiting

the shareholders, will protect the Plan or its beneficiaries. The Plan has already been compensated for the losses allegedly caused by defendants' mismanagement of the MMP funds. Nor will protection of shareholders encourage employers to establish ERISA plans. Plaintiff argues that employers will be more likely to offer a plan if they need not fear being held liable for another's wrongdoing. However, this rationale applies to the employer, not to the employer's shareholders suing derivatively.

One might argue that shareholders will be less likely to invest in a corporation with an ERISA plan than one without an ERISA plan if they will be unable to seek reimbursement from an ERISA fiduciary who breaches her duty to the plan beneficiaries. According to this reasoning, allowing shareholder derivative suits under ERISA would encourage companies to maintain plans in order to attract investors. However, this argument is too tenuous to be compelling. It is unlikely that prospective investors will consider the availability of remedies for breach of an ERISA fiduciary duty when deciding whether to buy stock in a corporation.[9]

In short, allowing Schrader standing to sue derivatively on behalf of ARCO will not further either of Congress' goals in enacting ERISA. Consequently, Schrader lacks standing to assert an ERISA claim. Accordingly, Schrader's state law cause of action is not preempted by ERISA, this Court lacks federal subject matter jurisdiction over plaintiff's claim, and the action is properly remanded to state court.

C. *Attorneys' Fees*

■ Plaintiff request that the Court award it costs and attorney's fees incurred in bringing this motion to remand. 28 U.S.C. § 1447(c) provides that a district court may, in its discretion, award attorneys' fees and costs incurred as a result of removal. "The statute imposes no requirement that the Court first make a finding of bad faith, frivo-

lous or vexatious removal, or lack of an objectively reasonable basis for removal." *Juliano v. Phoenix Communications, Inc.*, 1994 WL 721576 (N.D.Cal.1994) (citing *Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 446–48 (9th Cir.1992)). The decision of whether to award costs and fees lies within the sound discretion of the trial judge who may take into account the particular circumstances of the case and the legal issues involved. *Id.* (citing *Zandi–Dulabi v. Pacific Retirement Plans, Inc.*, 828 F.Supp. 760, 764 (N.D.Cal.1993) ("Because Defendants presented a colorable argument for removal, the court declines to exercise its discretion to award the fees and costs requested")).

Here, defendants' argument for removal was far from frivolous. In addition, the parties' efforts in untangling the ERISA preemption issue would have been necessary even if defendants had not removed the action to federal court. Accordingly, the Court concludes that plaintiff is not entitled to recover attorneys' fees and costs incurred as a result of defendants' removal.

### III.

### *CONCLUSION*

For the reasons set forth above, plaintiff's motion to remand is **GRANTED**. The Court therefore lacks subject matter jurisdiction to consider defendants' motion to dismiss. In addition, the Order to Show Cause re Dismissal for Lack of Prosecution of Doe Defendants is dissolved. Each party shall bear its own costs and attorneys' fees.

**IT IS SO ORDERED.**

---

**9.** "An indirect economic influence ... does not bind plan administrators to any particular choice and thus function as a regulation of an ERISA plan...." *Travelers*, 514 U.S. at ——, 115 S.Ct. at 1679 (holding New York statute providing for surcharges on hospital billing to commercial insurers did not "relate to" ERISA and was not preempted). Here, plaintiff's state law action would, at best, have only an indirect economic effect on the MPP Plan.