Roger OLSON, Plaintiff–Appellant,

v.

GENERAL DYNAMICS CORPORA-TION,* a foreign corporation; Allied Signal, Inc., a foreign corporation; Amex Systems Corporation, (a wholly owned subsidiary of Allied Signal Inc.); Science Applications International Corporation, a foreign corporation; SAIC Range Systems, a California corporation and Does 1 through 50 inclusive, Defendants–Appellees.

No. 90–55688.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1991.

Decided Dec. 20, 1991.

Certiorari Denied June 15, 1992. See 112 S.Ct. 2968.

---

* Editors Note: This opinion was originally published at 951 F.2d 1123. It is published here with Judge Reinhardt's concurring opinion.

Norman Allenby, Hillyer & Irwin, San Diego, Cal., for the plaintiff-appellant.

Mark S. Pulliam and Matthew L. Lalli, Latham & Watkins, San Diego, Cal., for defendants-appellees.

TANG, REINHARDT and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Roger Olson appeals the district court order granting summary judgment in favor of General Dynamics, Allied–Signal, Science Applications International Corporation ("SAIC"), and SAIC Range Systems (collectively, "the appellees"). The district court ruled that Olson's state law fraud claim relates to an employee benefit plan, and is therefore preempted by § 514(a), 29 U.S.C. § 1144(a), of the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C.

§§ 1001 *et seq.* The court also refused to grant Olson declaratory relief under 28 U.S.C. § 2201, holding that to formulate a federal common law remedy would defeat the purpose of the scheme Congress created in ERISA. Olson challenges both of these rulings in this appeal. The district court had jurisdiction under 29 U.S.C. § 1132(e), and we have jurisdiction under 28 U.S.C. § 1291. We affirm.

## BACKGROUND

Roger Olson was an employee with the Range Systems product line of General Dynamics from July 1955 until April 1986, at which time General Dynamics sold that line to Amex Systems, Inc., a subsidiary of Allied–Signal Inc. At the time of the sale, executives of both General Dynamics and Amex told Olson and the other Range Systems employees that they would be offered jobs with Amex, and General Dynamics promised Amex that it would not attempt to rehire any of those employees for a two-year period following the sale. This case is based upon the following statement made by the President of Amex to the Range System employees at the time of the sale (and before Olson decided to accept Amex' job offer): "I commit to you that in no way will you be injured. On the bottom line, you will be equal or better to [sic] your present position."

Olson accepted the job with Amex in April 1986. In January 1988, Amex sold the Range Systems product line to SAIC, where Olson worked until his retirement in June 1988. Olson participated in the employee benefit plan while he was employed by each of these three companies—General Dynamics, Amex and SAIC. Olson claims that the benefits he received upon retirement from SAIC were less than he would have received had he retired from General Dynamics.

Olson filed suit in state court against General Dynamics, Amex and SAIC, alleging that the level of benefits he would receive upon retirement was misrepresented to him at the time Range Systems was sold by General Dynamics to Amex. The defendants removed the case to federal

court and moved for summary judgment on the first amended complaint. The district court granted the motion on the ground that Olson's fraud claim is preempted by ERISA. The district court order reads in part:

> The court finds that plaintiff's fraud claim is preempted by ERISA. A state claim, in this case a claim of fraud, is preempted if it relates to the employee benefit plan. "The phrase 'relates to' [is] given its broad common-sense meaning, such that a state law 'relates to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987).
>
> ... Olson's claim relates to the benefit plan: he is claiming as a plan participant at AMEX or as a past participant at General Dynamics that he should be receiving a level of benefits which he is not. There is no allegation that he has been denied any benefits due him under either plan.

ER ex. 39 at 2–3. After distinguishing two Ninth Circuit cases upon which Olson relies, the district judge wrote:

> [Olson] is suing as a participant in the AMEX plan who doesn't like the level of benefits and believes that the level of benefits was misrepresented. Even if there was a misrepresentation, and the court does not find that there was one, his claim arises as a participant in both ERISA plans and consequently relates to those plans and is preempted.

*Id.* at 4. And in the portion of the order granting summary judgment on Olson's claim for declaratory relief, the judge ruled as follows:

> The court sees no reason to grant Olson's request for declaratory relief under 28 U.S.C. 2201, which is in essence a request to the court to devise a special remedy for Olson's fraud claim. Since the court has ruled that the fraud claim is preempted by ERISA, the court's cre-

ation of a remedy for this claim would defeat the scheme created by Congress in ERISA.

*Id.* at 5.[1] Olson filed a timely notice of appeal from the Order granting summary judgment.

## DISCUSSION

We review a grant of summary judgment de novo. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We must decide, viewing the evidence in the light most favorable to the Olson, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

### I.

■ Section 514(a) of ERISA provides that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Section 514(c)(1) indicates that this preemption provision extends to all state common law causes of action—provided, of course, that they relate to an employee benefit plan. 29 U.S.C. § 1144(c)(1); *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1504 (9th Cir.1985). As the Supreme Court has noted, this preemption clause is "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (internal quotation omitted). Consistent with that purpose, "[t]he phrase 'relate to' [is] given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 47, 107 S.Ct. at 1553 (internal quotation omitted). We review de novo the district court's decision that ERISA preempts Ol-

---

1. Olson's amended complaint also contained a cause of action for discrimination against General Dynamics under 29 U.S.C. § 1140. How-

ever, that claim was dismissed to perfect this appeal, and it is therefore not before us.

son's fraud claim. *Nevill v. Shell Oil Co.,* 835 F.2d 209, 211 (9th Cir.1987).

Given the Supreme Court's directive that ERISA's preemption provision is to be construed broadly, it is difficult to see how Olson's fraud claim could be found not to "relate to" an employee benefit plan. We think that the district court's conclusion that Olson's allegations "relate to" an employee benefit plan are a straightforward application of the standard established by the Supreme Court. To state his claim in the most favorable manner, Olson is alleging that, upon retirement, he received benefits from Amex and SAIC that were "considerably less" than the benefits General Dynamics and Amex led him to believe he would receive. The district court ruled that this is a claim "that he should be receiving a level of benefits which he is not." Concluding that such a claim "has a connection with" and makes "reference to" a benefit plan, the judge ruled that the state law fraud claim is preempted by ERISA.

To escape this seemingly inexorable conclusion, Olson relies upon two Ninth Circuit cases that he argues support his position that his fraud claim is not preempted. *Scott,* 754 F.2d 1499; *Martori Bros. Distributors v. James–Massengale,* 781 F.2d 1349 (9th Cir.), *amended,* 791 F.2d 799, *cert. denied,* 479 U.S. 1018, 107 S.Ct. 670, 93 L.Ed.2d 722 (1986). *Scott* is easily distinguished. Olson argues that it establishes a rule that claims for prospective benefits are not preempted by ERISA. In fact, the only reason that the claim for prospective benefits was held not to be preempted was because the company for which the plaintiff-employees worked did not have an employee benefit plan. After noting that a claim cannot "relate to" a plan that does not exist, we allowed the employees to proceed with their tort claim because it was based upon the conduct which led to the non-existence of such a plan. *Scott,* 754 F.2d at 1505–06.

Olson's reliance on *Martori* is not so easily dismissed, as there is language in that case that appears to limit significantly the reach of ERISA's preemption clause. In the course of discussing the Act's preemptive power, the Court wrote:

> The principle underlying all of these decisions would appear to be that the state law is preempted by section 514(a) if the conduct sought to be regulated by the state law is "part of the administration of an employee benefit plan"; that is, *the state law is preempted if it regulates the matters regulated by ERISA:* disclosure, funding, reporting, vesting, and enforcement of benefit plans.

*Martori,* 781 F.2d at 1357–58 (emphasis added). This language suggests two arguments in support of Olson's claim that his fraud action is not preempted. First, and most obviously, Olson might argue that his claim does not relate to the administration of a benefit plan. That is, Olson could argue that he is alleging not that the plans in which he participates are being administered improperly, but that the amount of benefits he would receive under those plans was misrepresented to him. Olson's second argument based on this passage would be that, because ERISA does not provide for a civil cause of action for alleged oral misrepresentations, his fraud claim does not "regulate matters regulated by ERISA," and therefore is not preempted.

As to the argument that Olson's allegations do not relate to the administration of an employee benefit plan, the short answer is that neither the statute nor the Supreme Court's pronouncements upon it have suggested such a requirement. Surely a claim can be said to have a "connection with" or make "reference to" a plan without it concerning the technical aspects of the plan's administration.[2] Nonetheless, the great majority of cases in which this Court and the Supreme Court have held that ERISA preempts state common law claims have involved situations where the plaintiff al-

---

2. We note that *Martori* was decided before the two most recent Supreme Court decisions that address ERISA preemption. *Pilot Life,* 481 U.S. 41, 107 S.Ct. 1549 (1987), and *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). While *Martori,* because of its unique factual context, is not inconsistent with those cases, it does appear to take a more narrow view of preemption. *Compare Martori,* 781 F.2d at 1359 (state law is preempted only if it "purports to regulate" ERISA plans) *with Pilot Life,* 481 U.S. at 47–48, 107 S.Ct. at 1553 ("we have emphasized that the preemption clause is not limited to state laws specifically designed to

leged that plan administrators were not providing benefits in accordance with the terms of the plan. *See Pilot Life*, 481 U.S. 41, 107 S.Ct. 1549; *Metropolitan Life*, 481 U.S. 58, 107 S.Ct. 1542; *Davidian v. So. Calif. Meat Cutters Union*, 859 F.2d 134, 135 (9th Cir.1988); *Johnson v. Dist. 2 Marine Eng. Beneficial Ass'n*, 857 F.2d 514, 517–18 (9th Cir.1988); *Nevill*, 835 F.2d at 212. If the language in *Martori* is understood to mean that a claim is preempted only if it alleges that a benefit plan is not being administered in accordance with the plan's provisions, then Olson's fraud claim may not be preempted.

To read *Martori* so broadly, however, would be to abstract from the peculiar facts of that case. The plaintiffs in *Martori*, as in *Scott*, were not even participants in the plan to which the Court found their claim did not relate. In *Martori*, the benefit plan in question was used only to measure the benefits that were awarded to union employees whose employers were found to have engaged in unfair labor practices. Because of those unfair practices, the plaintiffs did not receive the benefits that "might have been included had a contract been reached," *Martori*, 781 F.2d at 1353, and California law required the Court to look to the hypothetical "benefit package they would have received" to calculate the one-time, make-whole remedy. Understood in context, then, *Martori* does not stand for the proposition that ERISA preempts state law claims only if they relate to the nuts-and-bolts administration of a benefit plan.

*Martori* also suggests that ERISA only preempts state laws related to matters that ERISA regulates. Olson argues that none of the preemption categories listed in *Martori*—disclosure, funding, reporting, vesting, and enforcement of benefit plans—cover his claim that officials at General Dynamics and Amex misrepresented to him the level of benefits he would receive in his new job. A closer examination of *Martori*, however, reveals that *Martori* does not support Olson's position at all. While *Mar-*

*tori* espouses a narrow viewpoint on preemption, Olson's case falls directly under a category of cases which *Martori* acknowledges have traditionally been preempted by ERISA. 781 F.2d at 1356–57 & n. 19 ("laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan" are preempted by ERISA, including fraud claims).

In addition, the appellees respond that ERISA does regulate such a claim by providing a civil remedy to plan participants; they point to § 502(a)(1)(B), which provides: "A civil action may be brought—(1) by a participant . . . —(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Section 3(7) of ERISA defines a participant as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer." 29 U.S.C. § 1002(7). At the time he filed this suit, Olson was receiving benefits from all three companies. Olson was therefore a "participant" in each company's employee benefit plan, and he had the option of bringing a suit under § 502(a)(1)(B).

At the same time, however, the appellees concede that ERISA's civil remedy probably does not extend to claims of oral misrepresentation regarding the level of benefits provided by a plan. If the Court in *Martori* was correct in stating that ERISA only preempts laws that regulate matters regulated by ERISA, and if ERISA does not provide a remedy for one in Olson's position, then his claim is not preempted.[3] But neither this Court nor any other of which we are aware has ever adopted such a narrow reading of ERISA's preemption clause. As the Supreme Court wrote in *Pilot Life*:

> The policy choices reflected in the inclusion of certain remedies and the exclu-

affect employee benefit plans") (internal quotation omitted).

**3.** It is important to emphasize that Olson has not asserted a claim under § 502(a)(1)(B), ERISA's civil remedial scheme. That cause of action is discussed here only to address the

sion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

481 U.S. at 54, 107 S.Ct. at 1556. There is simply no reason to assume that Congress intended ERISA's preemptive reach to be coextensive with the Act's civil remedial scheme. The Eleventh Circuit has addressed this precise question in a case closely analogous to the present one:

> The employees protest that to hold that ERISA preempts this fraud claim, while also holding that ERISA does not prohibit the wrong the employees feel they have suffered, leaves a "gap" in the law. That is exactly the result that obtains when Congress determines that federal law should govern a broad area to the exclusion of state regulation and chooses not to prohibit the actions formerly prohibited by state law. It is the very conflict between the federal scheme and state law that is to be avoided through preemption. To argue that Congress has created a "gap" in the law does not undermine the reasoning on which a finding of preemption is based.

*Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1470 (11th Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987). We agree with the Eleventh Circuit that any such gap is the concern of Congress, and so we affirm the district court's ruling that Olson's fraud claim "relates to" an employee benefit plan, and is therefore preempted by ERISA.

### II.

■ Olson's complaint also contains a cause of action requesting the court, should it find the fraud claim to be preempted by ERISA, to "devise a federal common law remedy applicable to OLSON's circumstances." As indicated above, the district court declined this invitation, holding that to do so "would defeat the scheme created by Congress in ERISA." We review de novo the district court's denial of declaratory relief. *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir.1986). For the reasons already discussed regarding the interplay between ERISA's preemption provision and its remedial scheme, we agree with the district court that to devise a federal common law remedy for Olson's claim would defeat the scheme created by Congress in ERISA. The district court properly denied Olson's request.

### CONCLUSION

Because we agree with the district court that Olson's fraud claim relates to an employee benefit plan, and is therefore preempted by ERISA, the order granting the appellees' motion for summary judgment is AFFIRMED.

REINHARDT, Circuit Judge, concurring in the judgment:

I agree that ERISA preempts appellant's state law fraud claim, and that no federal or other remedy now exists for the wrongful conduct he alleges. Even if the defendants defrauded Olson and induced him to accept employment by falsely representing that he would receive pension benefits equal to those he previously enjoyed, Olson may not assert the state cause of action he would have been entitled to plead prior to the enactment of ERISA. Because of the passage of ERISA, Olson is left without a remedy. Unfortunately, his fate is not unique.[1]

Congress enacted ERISA in 1974 in order to protect the rights of participants in private pension plans to a stable, secure source of retirement income. *See* 18 U.S.C. § 1001(a) (1988); H.R.Rep. No. 533, 93d Cong., 2d Sess. (1974) *reprinted in* 1974 U.S.C.C.A.N. 4639, 4642–43. As the court's decision in this case illustrates, however, a statute designed to safeguard employee retirement benefits has, all too frequently, been used to deprive employees

---

argument that Olson has no remedy available to him if his fraud claim if preempted by ERISA.

**1.** I should note that in this case Olson's loss of his right to assert a fraud claim is of no practical consequence, since, in my opinion, the district court would have been required to grant defendants' summary judgment motion even if a cause of action for fraud could be asserted after ERISA. Olson cannot show that he was damaged as a result of the alleged misrepresentation

of rights they previously enjoyed under state law while failing to provide any comparable federal remedy.

The federal courts have routinely found state tort and implied contract remedies preempted by section 514(a) even when ERISA provides no substitute for the state cause of action. *See, e.g., Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (injured employee whose long term disability benefits were terminated and reinstated several times over a five year period could not bring tort action against insurer); *Howard v. Parisian, Inc.*, 807 F.2d 1560 (11th Cir.1987) (employee whose employment was terminated several days after he was severely injured in an automobile accident could not sue employer for bad faith refusal to pay benefits and intentional infliction of emotional distress); *see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Maciosek v. Blue Cross & Blue Shield*, 930 F.2d 536 (7th Cir.1991); *Gibson v. Prudential Ins. Co. of America*, 915 F.2d 414 (9th Cir. 1990); *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290 (5th Cir.1989); *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir.1989); *Nevill v. Shell Oil Co.*, 835 F.2d 209 (9th Cir.1987); *Anderson v. John Morrell & Co.*, 830 F.2d 872 (8th Cir.1987); *Powell v. Chesapeake & Potomac Tel. Co.*, 780 F.2d 419 (4th Cir. 1985), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986). At the same time, the federal courts have consistently ruled that ERISA plaintiffs may not recover extracontractual damages. *See, e.g., Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821 (1st Cir.) (employee who suffered second heart attack after he returned to work following termination of his disability benefits could not recover punitive damages even though the doctors who recommended termination failed to examine his medical records), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *Sokol v. Bernstein*, 803 F.2d 532 (9th Cir. 1986) (beneficiary of pension plan could not

recover damages for emotional distress from fiduciary who refused to honor express written agreement regarding disbursement of funds unless beneficiary waived all claims for breach of fiduciary duty); *see also Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir.1989); *United Steelworkers v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir.1988), *cert. denied sub nom. H.K. Porter Co. v. United Steelworkers*, 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989); *Varhola v. Doe*, 820 F.2d 809 (6th Cir.1987); *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618 (7th Cir.1987); *Sommers Drug Stores Co. v. Corrigan Enterprises*, 793 F.2d 1456 (5th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987); *Powell v. Chesapeake & Potomac Tel. Co.*, 780 F.2d 419 (4th Cir.1985), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986).

The federal courts have held that ERISA preempts various provisions of state antidiscrimination statutes, and have barred lawsuits under other provisions if the underlying complaint relates to denial of benefits. *See, e.g., Ingersoll–Rand Co. v. McClendon*, —— U.S. ——, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (employee who was fired after 9 years and 8 months of service, 4 months before his pension would have vested, could not bring action for wrongful discharge); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (holding that ERISA preempts certain provisions of the New York Human Rights Law and Disability Benefits Law); *Felton v. Unisource Corp.*, 940 F.2d 503 (9th Cir.1991) (employee who was fired five months after he returned to work following a medical leave of absence for lung cancer treatment could not sue employer for age and handicap discrimination under state civil rights statute); *Champion Int'l Corp. v. Brown*, 731 F.2d 1406 (9th Cir.1984) (holding that ERISA preempts certain pro-

since he had no option to stay with General Dynamics in any event. In addition, the record clearly demonstrates that no genuine issue of material fact exists as to whether he was actually misled by General Dynamics. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Therefore, Olson's fraud claim is legally insufficient and summary judgment for defendants was appropriate.

visions of Montana's age discrimination law); *see also Fitzgerald v. Codex Corp.*, 882 F.2d 586 (1st Cir.1989). We have also interpreted section 514(a) to preempt the use of mechanics liens, *Sturgis v. Herman Miller, Inc.*, 943 F.2d 1127 (9th Cir.1991), and to bar the use of state law principles of contract interpretation. *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437 (9th Cir.1990); *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989); *Sampson v. Mutual Benefit Life Ins. Co.*, 863 F.2d 108 (1st Cir.1988).

The proliferation of ERISA preemption cases, in my view, raises a question as to whether ERISA is having an effect that is substantially contrary to that intended by those who favored its adoption. This is a matter which Congress may wish to examine carefully.