**Kevin McBRIDE, Plaintiff–Appellant,**

v.

**PLM INTERNATIONAL, INC., Defendant–Appellee.**

No. 97–15433.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 17, 1998.

Decided Aug. 20, 1998.

---

Christopher W. Katzenbach and W. Kent Khtikian, Katzenbach and Khtikian, San Francisco, California, for plaintiff-appellant.

Randall J. Sunshine, Liner Yankelevitz Sunshine Weinhart Riley & Regenstreif, Santa Monica, California, for defendant-appellee.

Before: D.W. NELSON, BEEZER and TROTT, Circuit Judges.

Opinion by Judge BEEZER; Dissent by Judge TROTT.

BEEZER, Circuit Judge:

Kevin McBride ("McBride") appeals the district court's order granting summary judgment in favor of PLM International, Inc. ("PLM"), and dismissing McBride's complaint. McBride, a former employee of PLM, brought suit alleging that PLM's termination of his employment violated § 1140 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461. McBride also brought various state law causes of action. The district court granted summary judgment in favor of PLM, holding that McBride lacked standing under ERISA. The district court dismissed the complaint for lack of subject matter jurisdiction and dismissed the pendent state law claims without prejudice to refiling in state court. We have jurisdiction, 28 U.S.C. § 1291, and affirm.

I

PLM hired McBride in March 1988. Until April 1994 McBride consistently received favorable performance evaluations. During this period PLM gave bonuses to McBride and circulated three memoranda commending him for his work performance. PLM also gave McBride increased job responsibilities throughout this period. In early April 1994 Robert Tidball, PLM's president and chief executive officer, and Douglas Goodrich, McBride's supervisor and a PLM senior vice president, told McBride that he might be promoted to director of operations. PLM instead hired Jeff Alpert as director of operations. McBride was not promoted.

On April 7, 1994, McBride submitted a request for payment of commissions earned three years previously. On April 14 Goodrich and McBride met to discuss the requested payments. Goodrich stated that he did not believe that McBride was entitled to the commissions, but that he would authorize payment if PLM's legal department determined otherwise. McBride became angry and threatened to sue PLM if the commissions were not paid. Goodrich wrote a memorandum describing this meeting and had the memorandum placed in McBride's personnel file. Soon thereafter McBride apologized to Goodrich for his inappropriate behavior at the meeting. Goodrich informed McBride that further insubordination would result in McBride's termination. PLM paid McBride the requested commissions approximately a month after this incident.

Sometime later, Goodrich asked McBride to prepare two leasing reports ("the Leasing Reports"). McBride testified that he gave the Leasing Reports to Goodrich on July 26, 1994. Goodrich testified that McBride never gave him the reports.

On August 4, 1994, McBride met with Alpert, director of operations. At this meeting, McBride accused Alpert of inappropriately

working on the personal affairs of another individual during business hours.

McBride was a participant in and beneficiary of the PLM Employers Profit Sharing and Tax Advantaged Savings Plan ("401–K Plan") and the PLM Employee Stock Ownership Plan ("ESOP") (collectively, "the Plans"). Both of the Plans qualified as ERISA employee benefit plans. *See* 29 U.S.C. § 1002(3). McBride was an active member of the Junior ESOP Committee ("the ESOP Committee"), an employee committee.

In spring 1994 PLM announced its intention to terminate the ESOP. Under the termination plan, each share of PLM preferred stock held by the ESOP would be exchanged for one share of PLM common stock. McBride considered this exchange unfair because the common stock was less valuable than the preferred stock. McBride first voiced his concerns about the termination plan in a meeting during early April 1994 with Goodrich and Tidball. McBride also expressed his opposition to the termination at an employees' informational meeting called by PLM during summer 1994. During that meeting Tidball responded to McBride's comments with impatience and nonverbal hostility. Even though Tidball had opened the floor to employee questions, he cut off McBride's questions. McBride also voiced his concerns during weekly departmental meetings led by Goodrich and in a meeting with Tidball.

On July 20, 1994, McBride and other members of the ESOP Committee signed and delivered a letter to the United States Department of Labor ("DOL") asking that the DOL make comments to the Internal Revenue Service about PLM's planned termination of the ESOP. McBride and other members of the ESOP Committee provided information to the DOL about the ESOP and the effect of its termination on PLM employees.

Tidball and Steven Peary, PLM's chief in-house counsel, were upset with the ESOP Committee's decision to send the letter to the DOL. Tidball and Peary offered to pay for outside counsel to review the propriety of the ESOP termination if the ESOP Committee would withdraw its letter to the DOL.

McBride was alone among the ESOP Committee members in opposing this offer. The ESOP Committee withdrew the letter.

McBride was terminated on August 9, 1994, less than three weeks after the letter was sent to the DOL. Goodrich wrote McBride a termination letter stating that McBride was being terminated because of his "explosive, threatening and insubordinate behavior to two different supervisors" and because of his failure to produce the Leasing Reports.

Sometime after August, PLM terminated the ESOP and gave all participants, including McBride, a lump sum distribution of their benefits under the Plans. In November 1994 McBride began employment with Union Bank of California.

In August 1995 McBride filed suit in district court, alleging (1) violation of 29 U.S.C. § 1140 (ERISA's whistleblower section); (2) wrongful termination in violation of public policy; (3) defamation; and (4) breach of the covenant of good faith and fair dealing. The district court entered an order dismissing certain of McBride's claims. McBride filed a second amended complaint alleging (1) violation of 29 U.S.C. § 1140; (2) wrongful termination in violation of public policy; and (3) defamation. PLM moved for summary judgment on each of those causes of action, and McBride moved for reconsideration of the order dismissing the fourth claim of his original complaint.

The district court granted in part PLM's motion for summary judgment. The district court held that McBride lacked standing to bring an action under ERISA because he was not a participant in an ERISA plan at the time he filed his complaint. The district court therefore dismissed the complaint for lack of subject matter jurisdiction, vacated its prior order dismissing certain of McBride's claims and dismissed the complaint without prejudice to McBride's pursuing his state law claims in state court. McBride filed a motion for reconsideration, which the district court denied. This timely appeal followed.

## II

We review de novo the existence of subject matter jurisdiction in the district court. *Schultz v. PLM Int'l, Inc.*, 127 F.3d 1139, 1141 (9th Cir.1997). We also review de novo a district court's grant of summary judgment. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996).

## III

The district court held that McBride lacked standing to bring a claim under ERISA because he was not, at the time of filing his complaint, a "participant," "beneficiary" or "fiduciary" within the meaning of 29 U.S.C. § 1132(a), ERISA's civil enforcement provision. We agree with the district court's analysis.

### A

McBride's complaint alleges a violation of 29 U.S.C. § 1140. That section provides, in relevant part, that

[i]t shall be unlawful for any person to discharge ... or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan.... It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter.... The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140. The last sentence of this section provides for enforcement exclusively through 29 U.S.C. § 1132, ERISA's enforcement provision. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 144, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *see also McKinnon v. Blue Cross and Blue Shield of Ala.*, 935 F.2d 1187, 1193–94 (11th Cir.1991) (§ 1140 may be enforced only by persons empowered to bring a cause of action under § 1132).

Because § 1140 may be enforced only through § 1132, McBride has standing to bring this action only if he is a plan participant, beneficiary or fiduciary. *See Harris v. Provident Life and Accident Ins. Co.*, 26 F.3d 930, 933 (9th Cir.1994) ("[A] federal court has no jurisdiction to hear a civil action under ERISA that is brought by a person who is not a 'participant, beneficiary, or fiduciary.' ") (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

McBride contends that he has standing because he was a plan participant at the time of the alleged violation of § 1140. A participant is defined as "any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). At the time of his termination, McBride was eligible to receive a benefit under PLM's ERISA plans and was therefore a "participant." This fact, he claims, gives him standing to pursue this claim.

It is, however, the settled law of this court that a person's standing as a plan participant "must be decided as of the time of the filing of the lawsuit." *Harris*, 26 F.3d at 933 (citing *Olson v. General Dynamics Corp.*, 960 F.2d 1418, 1422 (9th Cir.1991); *Nishimoto v. Federman–Bachrach & Assocs.*, 903 F.2d 709, 714 (9th Cir.1990)); *see also Schultz*, 127 F.3d at 1142 (participant status is determined at the time of filing of suit). McBride was a former employee of PLM when he filed suit. "A former employee is a plan participant only if he has 'a reasonable expectation of returning to covered employment or [has] a colorable claim to vested benefits.' " *Id.* (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). Where, before filing suit, a former employee has received all of the benefits owed under an ERISA plan, that person is no longer a participant and therefore lacks standing for purposes of ERISA. *Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir.1986).

Because the Plans had been terminated before this complaint was filed, McBride did not have a reasonable expectation of returning to covered employment. Nor did he have a colorable claim to vested benefits: McBride's benefits under the Plans had already been distributed to him. Because he had neither a reasonable expectation of returning to covered employment nor a color-

able claim to vested benefits, McBride was not a participant in an ERISA plan at the time he filed suit. He therefore lacked standing to bring a claim under § 1132.

### B

■ McBride contends that the analysis set out above does not apply to cases alleging violations of § 1140. He argues that § 1140 implicitly broadens the standing provisions of § 1132 to include persons who were participants at the time of the claimed violation. This approach is, he claims, consistent with our analysis of standing in *Amalgamated Clothing & Textile Workers Union v. Murdock*, 861 F.2d 1406 (9th Cir.1988). He further insists that a contrary result would permit violations of § 1140 to go unpunished, thereby contravening Congress' intention to prohibit retaliation. These arguments are not persuasive.

#### 1

McBride's interpretation is not supported by the text of the statute. As noted above, § 1140 provides that "[t]he provisions of § 1132 of this title shall be applicable in the enforcement of this section." Nothing in § 1132 suggests that its standing requirements are modified by § 1140. A person claiming a violation of § 1140 must therefore have standing under § 1132. As set out above, under § 1132 standing is determined at the time of filing. *See Schultz*, 127 F.3d at 1142; *Harris*, 26 F.3d at 933. Under that standard McBride cannot establish standing.

#### 2

McBride argues further that the district court's approach is contrary to our analysis in *Murdock*, 861 F.2d 1406. Specifically, McBride contends that *Murdock* stands for the proposition that a person has standing under ERISA where a finding of standing would promote the purposes of ERISA. As a corollary, McBride argues that the district court's approach frustrates Congress' intent to prohibit retaliation against employees who speak out regarding their ERISA benefits.

Again we disagree. *Murdock* holds merely that "a constructive trust to recover ill-gotten gains qualifies as a 'benefit of any type' under ERISA." *Schultz*, 127 F.3d at 1141; *see also Murdock*, 861 F.2d at 1419. A

plaintiff who seeks to impose a constructive trust on a breaching fiduciary's ill-gotten gains therefore has standing under ERISA. *Murdock*, 861 F.2d at 1419. In determining what constitutes a "benefit" for purposes of ERISA, we considered the goals of ERISA. *See id.* at 1411. But nothing in *Murdock* suggests that promotion of ERISA's goals suffices in itself for a finding of standing.

McBride's proposed test for standing recalls the "zone of interests" test for standing that we used in *Fentron Indus., Inc. v. National Shopmen Pension Fund*, 674 F.2d 1300, 1304–05 (9th Cir.1982). Under that test, we asked whether a plaintiff's alleged injuries fell "within the zone of interests that Congress intended to protect when it enacted ERISA." *Id.* at 1305. As we recognized in *Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261, 1265 (9th Cir.1992), *Fentron*'s "zone of interests" test was repudiated by *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), and *Franchise Tax Bd.*, 463 U.S. at 27, 103 S.Ct. 2841. We now apply the approach to standing set forth in *Harris*, 26 F.3d at 933. We see no reason to alter that analysis in the present case.

McBride's argument from policy is also unpersuasive. ERISA empowers the Secretary of Labor to bring a civil action to address violations of § 1140. *See* 29 U.S.C. § 1132(a)(5); *McKinnon*, 935 F.2d at 1193–94. Because Congress chose to provide this means of redressing violations of § 1140, we will not imply an alternate remedy. *See Massachusetts Mut. Life*, 473 U.S. at 146, 105 S.Ct. 3085 ("The six carefully integrated civil enforcement provisions found in [§ 1132(a)] provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.") (emphasis in original).

### C

■ Our precedents mandate our decision in this case. A person has standing to bring an ERISA claim only if he or she is a participant, a beneficiary or a fiduciary of an ERISA plan. *Harris*, 26 F.3d at 933. Participant status is determined at the time of filing. *Id.* A former employee who has re-

ceived a distribution of all benefits owed by an ERISA plan is not a participant. *Kuntz,* 785 F.2d at 1411. Because McBride had received a distribution of all of his ERISA benefits before the filing of this action and could not return to covered employment, he lacked standing under ERISA.

## IV

McBride's ERISA claim was the only federal cause of action in this suit. His other claims were all state law claims. Having dismissed McBride's sole federal claim for lack of jurisdiction, the district court could not assert pendent jurisdiction over his state law claims. *See Harris,* 26 F.3d at 934 ("[A] district court has no discretion to retain state law claims when the sole federal claim is dismissed for lack of jurisdiction."). Similarly, because McBride lacks standing under ERISA, ERISA does not preempt his state law causes of action. *See Curtis v. Nevada Bonding Corp.,* 53 F.3d 1023, 1027 (9th Cir. 1995) ("[W]ithout standing to enforce ERISA, there can be no ERISA preemption.") (citing *Harris,* 26 F.3d at 934). The district court did not err in dismissing McBride's complaint without prejudice to pursuing his state law causes of action in state court.

## V

The decision of the district court is **AFFIRMED.**

TROTT, Circuit Judge, Dissenting:

## OVERVIEW

Kevin McBride appeals the district court's order granting summary judgment in favor of his employer PLM, International, Inc. The court granted summary judgment on the ground that McBride's discharge in conjunction with the termination of the employee benefit plan left him without the "participant status" required to give him standing to sue under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1994). The district court relied on several Ninth Circuit cases which have held that a claimant's status is to be evaluated at the time of filing suit. These cases, however, do not control McBride's claim. Policy considerations mandate that

participant status and standing under ERISA's whistle blower provision be adjudged at the time of the alleged ERISA violation. To hold otherwise allows an employer wrongfully to terminate an employee and then wrongfully to terminate an employee benefit plan, thereby depriving its former employee of standing to sue for the wrongdoing under ERISA. Such a holding undercuts the very protections ERISA was designed to afford. Thus, I respectfully dissent.

## BACKGROUND

Kevin McBride was hired by PLM, International, Inc. in March of 1988 to work in its TEC department. Prior to his termination on August 9, 1994, he was promoted twice and received two bonuses in addition to several salary increases. During his employment, McBride's performance evaluations noted that his work was excellent or outstanding. Letters accompanying the bonuses commended him for his good work and significant contributions to the company.

In early April 1994, McBride met with Robert Tidball, President and CEO of PLM, and Douglas Goodrich, McBride's supervisor and a PLM Senior Vice President. They informed McBride that he had a bright future with the company and that he was in line for a promotion to the new position of Director of Operations for the TEC department. Also in April of 1994, McBride submitted a written request for payment of commissions earned during the previous three years. He met with his supervisor, Goodrich, to discuss the commissions. Goodrich informed McBride that he did not think PLM had to pay the commissions, but if the legal department believed it must, PLM would pay. The discussion became quite animated, culminating in McBride's threat to sue PLM if the commissions were not paid. After the meeting, Goodrich wrote a confidential memorandum to the PLM personnel department describing McBride's conduct and instructing that the letter be placed in McBride's file. After a few days, McBride apologized to Goodrich for his behavior. Goodrich informed McBride that if he was insubordinate again, he would be terminated. PLM paid

the commissions to McBride one month after his written request.

After this incident, Goodrich requested that McBride prepare two reports for him. Goodrich testified that McBride never turned in the reports, only the raw data. McBride testified that he had turned in the requested reports.

McBride was a participant in and beneficiary of both the PLM International Employee Profit Sharing and Tax Advantaged Savings Plan (401-K Plan) and the PLM International Employee Stock Ownership Plan (ESOP) (collectively the Plans). McBride was also an active member of the Employee ESOP Committee. In the spring of 1994, PLM announced its intention to terminate the ESOP and proposed to convert each share of PLM preferred stock held by the ESOP to one share of PLM common stock. McBride ardently opposed PLM's proposal and called for a meeting of employees to discuss the ESOP termination. He alleged that the preferred stock had a redemption price or value of $13.00 per share and the common stock had a market price of $3.06 per share. He argued that the conversion of the preferred shares would result in the loss of the guaranteed dividend payable on the preferred shares and the reduction in value equal to the difference between the redemption price of the preferred stock and the market price of the common stock. McBride also expressed his opposition personally to both Tidball and Goodrich.

PLM filed a request with the IRS for a determination of whether the termination of the ESOP would affect the ESOP's tax status or qualification. In July 1994, McBride and other members of the employee ESOP committee sent a letter to the U.S. Department of Labor asking it to submit comments to the IRS on the proposed ESOP termination. In the letter, McBride and other committee members provided information on the ESOP and the effect its termination would have on PLM employees.

PLM management was upset by the committee's letter and offered to pay for an outside attorney to review the propriety of the ESOP termination if the committee would withdraw the letter to the Labor Department. All committee members, except McBride, agreed to this proposal. They withdrew the letter. On August 9, 1994, less than three weeks after the letter incident, PLM discharged McBride. The proffered reasons were McBride's insubordinate conduct toward his supervisors and his failure to produce the requested reports.

Later in August, PLM terminated the ESOP. All participants, including McBride, received a lump sum distribution of their benefits under the Plan. They received the value of the common rather than the preferred stock. Also, after McBride's termination, Goodrich held an employee meeting in which he allegedly stated that McBride was not discharged because of his opposition to the ESOP termination, but because of his work performance and poor attitude.

In his original complaint, McBride alleged that he was terminated by PLM in retaliation for his opposition to the prospective termination of the ESOP and 401-K Plan. McBride asserted four claims for relief: (1) violation of § 1140 of ERISA, the "whistle blower" section; (2) a supplemental state law claim for wrongful termination in violation of public policy; (3) a supplemental state law claim for defamation arising from PLM's publication of statements criticizing McBride after his termination; and (4) another state law claim for breach of the covenant and good faith and fair dealing from the terms of the Certificate of Designations, governing the preferred shares of PLM stock held by the ESOP.

PLM successfully moved, under Federal Rule of Civil Procedure 12(b)(6), for dismissal of the fourth cause of action for breach of the covenant of good faith and fair dealing on the basis that the claim was preempted by ERISA. Subsequently, McBride submitted an amended complaint which excluded the fourth cause of action. However, McBride appeals the decision of the district court finding this cause of action preempted by ERISA.

PLM then brought a motion for summary judgment alleging that McBride lacked standing to bring the ERISA claim. The district court granted PLM's motion for summary judgment on the basis that McBride failed to qualify as a "participant" under

ERISA at the time of filing the lawsuit and therefore lacked standing to assert a claim for relief in federal court. Further, the court determined that it lacked jurisdiction to rule on whether McBride's fourth cause of action was preempted by ERISA.

## DISCUSSION

Questions of federal subject matter jurisdiction are questions of law reviewed de novo. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989). A grant of summary judgment is reviewed de novo. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834, *amended by* 125 F.3d 1281 (9th Cir.1997).

### A. Standing to Sue Under ERISA Participant Status Under Whistle Blower Provision

ERISA grants standing to a "participant" in an employee benefit plan to bring a civil action to enforce his rights under the terms of the plan or to enforce the provisions of ERISA. 29 U.S.C. § 1132 (1994). Section 1132, the civil enforcement provision of ERISA, provides that a civil action may only be brought by a participant, beneficiary or fiduciary. The list of potential claimants in § 1132 is exclusive. *Harris v. Provident Life and Accident Ins. Co.*, 26 F.3d 930, 933 (9th Cir.1994).

ERISA defines the term "participant" to include "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7).

The Supreme Court has defined the term "participant" to mean "either employees in, or reasonably expected to be in, currently covered employment, or former employees who have ... a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 117, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (citations and quotations omitted). The Court also construed the "may become eligible" for benefits language of § 1002(7) to mean that "a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility require-

ments will be fulfilled in the future." *Id.* at 117–18, 109 S.Ct. 948. The Court reasoned, a former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, "simply does not fit within the phrase 'may become eligible.'" *Id.* at 118, 109 S.Ct. 948 (citing *Saladino v. I.L.G.W.U. Nat'l Retirement Fund*, 754 F.2d 473, 476 (2d Cir.1985)).

PLM argues that McBride lacks standing to sue under ERISA. It contends ERISA excludes from the definition of "participant" former employees who have received full distributions of their vested benefits. PLM also argues that McBride has no reasonable expectation of returning to covered employment, as the plan itself no longer exists.

The problem with PLM's arguments, and the cause for my respectful difference with the district court and with my colleagues, is the context in which McBride's ERISA claim arose. McBride alleged that he was terminated in retaliation for his opposition to PLM's proposed termination of the ESOP and the 401–K Plan. The ERISA whistle blower provision makes it illegal to discharge an employee for exercising his rights under the benefit program or under ERISA. Section 1140 states:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit program.... It shall be unlawful for any person to discharge, fine, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceedings related to this chapter.... The provisions of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140. "This statute is clearly meant to protect whistle blowers." *Hashimoto v. Bank of Hawaii*, 999 F.2d 408, 411 (9th Cir.1993).

The district court in this case felt compelled by precedent to find that McBride lacked standing to sue under ERISA because he was not a participant at the time he filed

suit. The district court was rightly concerned, however, that its holding would allow employers unfairly to escape liability for violations of ERISA. The very actions taken by an employer which presumably violated ERISA might, the district court reasoned, simultaneously have the effect of depriving potential employees of standing to sue. In its written decision, the court expressed its apprehension:

> The Court is concerned that this could result in an injustice because an employer could wrongfully terminate an employee and wrongfully terminate a benefit plan, thereby depriving its former employee and former participant of standing to sue for the wrongdoing under ERISA, a law designed to protect employees.

In other distinguishable contexts, this court has asserted that standing for former employees is measured at the time of filing suit. *See, e.g., Harris,* 26 F.3d at 933; *Olson v. General Dynamics Corp.,* 960 F.2d 1418, 1422 (9th Cir.1991). However, none of the cases dealing with this rule arose in the context of the whistle blower provision of ERISA. This court left open the relationship between §§ 1140 and 1132 of ERISA, noting that it was "a question we need not decide now." *Hashimoto,* 999 F.2d at 411.[1]

Section 1140 creates a right of action for interference with protected rights that accrues upon the occurrence of the prohibited acts. Depriving a plaintiff of standing to sue under ERISA for his employer's clear violation of the statute makes standing contingent upon the occurrence of subsequent events entirely within the control of the employer. "[I]t would seem more logical to say that but for the employer's conduct alleged to be in violation of ERISA, the employee would be a current employee with a reasonable expectation of receiving benefits, and the employer should not be able through its own malfeasance to defeat the employee's standing." *Christopher,* 950 F.2d at 1221 (citing *Amalgamated Clothing and Textile Workers v.*

*Murdock,* 861 F.2d 1406, 1418 (9th Cir.1988)). Requiring that claimants like McBride be plan participants at the time of suit would create a race to the courthouse. Standing would depend upon which event occurred first: the plan's termination or the claimant's filing of a lawsuit. In this case, McBride alleged that his discharge was caused by his criticism of PLM's proposed ESOP termination. The irony of holding that the plan's termination itself then deprived McBride of standing to sue is palpable.

When an individual alleges, as here, that he was discharged in violation of ERISA's whistle blower provisions, his employer cannot be allowed to evade § 1140 accountability simply by terminating the plan and distributing the benefits. If an employee is a participant at the time of the alleged ERISA violation and alleges that he was discharged or discriminated against because of protected whistle blowing activities, we should hold that the employee has standing to sue under ERISA. To require that the claimant be a participant at the time of filing suit undermines the very purpose of ERISA's whistle blower provision to provide a federal remedy for discrimination against plan participants for exercising their protected rights under ERISA. These protected rights specifically include the right to request comments from the Department of Labor on a proposed plan termination. *See* 29 U.S.C. §§ 1140, 1201.

Because McBride was a "participant" in the ESOP at the time of his allegedly retaliatory discharge, he falls within the scope of protection afforded by the whistle blower provision of ERISA. Therefore, he should have standing to sue PLM for lost wages and benefits, specifically the loss in value of his proportional share of the ESOP before conversion of the preferred stock. Consistent with his original prayer for relief, McBride also has standing to seek equitable relief to enjoin further violations of ERISA. This may include reinstatement to his former po-

---

1. Although the court in *Hashimoto* did not decide the question of whether § 1132 limited potential plaintiffs who could file suit under § 1140, the court did conclude that the plaintiff in that case was a fiduciary and therefore had standing to sue. The status of fiduciary was determined at the time of the alleged violation of ERISA's whistle blower provision, not at the time of filing suit. *Hashimoto* was no longer a fiduciary when she filed suit and yet she was "empowered to bring a civil action under § 1132 to enforce § 1140, ERISA's whistle blower provision." *Hashimoto,* 999 F.2d at 411.

sition at PLM and either reinstatement of the ESOP or reconversion of all common shares distributed back to their preferred stock value.

I would hold that under § 1140, participant status must be measured at the time of the alleged violation because the cause of action accrues at the time of discharge or discrimination. Standing under § 1140 does not depend upon whether the former employee seeks to or could obtain reinstatement to covered employment. The continued existence of a plan is not essential to the enforcement of the goals § 1140 was designed to address. *See Christopher v. Mobil Oil Corp.,* 950 F.2d 1209, 1221 (5th Cir.1992).

This holding would be consistent with the Congressional findings and declaration of policy of ERISA: "It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, ... by providing for appropriate remedies, sanctions, and *ready access to the Federal courts.*" 29 U.S.C. § 1001(b) (emphasis added). This court should be guided by Congressional policy and purpose. *See Crotty v. Cook,* 121 F.3d 541, 546 (9th Cir.1997). Furthermore, the legislative history of ERISA indicates that "Congress viewed [the whistle blower provision] as a crucial part of ERISA because, without it employers would be able to circumvent the provision of promised benefits." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 143, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (citations omitted).

## B. ERISA Preemption of Fourth Cause of Action

Because the district court had subject matter jurisdiction to adjudicate McBride's claims, the court could indeed have entertained the issue of ERISA preemption. *See Curtis v. Nevada Bonding Corp.,* 53 F.3d 1023, 1027 (9th Cir.1995) (holding that a plaintiff's standing to enforce ERISA is a prerequisite to both subject matter jurisdiction and ERISA preemption).

McBride's fourth cause of action alleged that PLM entered into a contractual relationship with owners of its preferred stock and breached the covenant of good faith and fair dealing. The contract terms were governed by the Certificate of Designations which enumerated the rights and conditions under Delaware state law attached to ownership of PLM preferred stock. The Certificate provided that preferred stock could only be held by a trustee of the ESOP or some other PLM benefit plan. Upon transfer, the preferred stock would be converted to common stock. McBride alleged that PLM terminated the ESOP and the 401–K plan to effect an automatic conversion of the preferred shares into common shares. He contends this constituted a breach of an implied covenant in the Certificate of Designations. The district court did not originally err when it dismissed the Fourth Cause of Action. The cause of action fell within ERISA's preemptive scope. I believe the district court did err, however, in its final order granting summary judgment to PLM when it stated that, because it did not have jurisdiction over the matter, there could be no preemption under ERISA.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. 29 U.S.C. § 1144(a); *Ford v. St. Joseph's Omni Preferred Care Inc.,* 130 F.3d 1355, 1358 (9th Cir.1997). "[A]lthough ERISA's express preemption is deliberately expansive, the preemption does not extend to state claims that affect employee benefit plans in too tenuous, remote, or peripheral a manner." *Ford,* 130 F.3d at 1358 (citations and quotations omitted). "A law that does not refer to ERISA may still be preempted by it if is has a 'connection with' ERISA plans." *California Div. of Labor Standards Enforcement v. Dillingham Constr.,* 519 U.S. 316, 117 S.Ct. 832, 838, 136 L.Ed.2d 791 (1997). To determine whether the state law has the "forbidden connection," the court must look to the objectives of the ERISA statute as well as to the nature of the effect of the state law on ERISA plans. *Id.*

To determine whether an implied covenant of good faith and fair dealing contained in the Certificate is connected to an ERISA benefit plan, district courts weigh the following factors:

(1) whether the state law regulates the types of benefits of ERISA employee welfare benefit plans;

(2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law;

(3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans; and

(4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and employee.

*Operating Eng'rs Health and Welfare Trust Fund v. JWJ Contracting Co.*, 135 F.3d 671, 678 (9th Cir.1998) (quoting *Aloha Airlines, Inc. v. Ahue*, 12 F.3d 1498, 1504 (9th Cir. 1993)).

The district court held that because McBride's Fourth Cause of Action relates to PLM's employee benefit plan, the cause of action is preempted. If the district court applied Delaware state law, the court would be directly regulating the types of benefits PLM's employees would receive. McBride argues the district court should have directed PLM to pay the redemption price for preferred shares of stock held by the ESOP trustee, rather than the conversion price at the common stock value. Because the court's action would have regulated the types and amount of benefits provided by the ESOP, ERISA preempts the state claim.

In addition, regulation of an ERISA relationship, whether direct or indirect, is a sufficient basis for preemption. *Gibson v. Prudential Ins. Co. of America*, 915 F.2d 414, 416 (9th Cir.1990). "Even claims brought under state-law doctrines that do not explicitly refer to employee benefit plans are preempted when the claims arise from the administration of such plan whether directly or indirectly." *Id.* (citing *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095 (9th Cir.1985)). The Certificate of Designations explicitly regulates the shares of stock under the ESOP and other PLM employee benefits plans. The Certificate was drafted in connection with the ESOP and its related documents. The purpose of the preferred shares as described in the Certificate of Designations was to fund the ESOP. Even McBride acknowledges that the Fourth Cause of Action arose from a purported breach of the covenant of good faith and fair dealing between PLM and the owners of its preferred stock, the employees who were beneficiaries of the ESOP. The Certificate of Designations affects the relationships between the ERISA plan and the employer, as well as the employer and employee. The Certificate clearly related to an ERISA plan. Therefore, McBride's fourth cause of action should have been preempted by ERISA.

### CONCLUSION

Kevin McBride alleges that he was discharged from his employment with PLM International, Inc. in retaliation for his opposition to the proposed termination of the firm's employee benefit plans. Shortly after McBride's discharge, PLM indeed terminated the ESOP and 401–K plan. PLM distributed benefits to participants in the form of a lump sum. When a claimant falls under ERISA's whistle blower provision, the overriding policy of ERISA mandates that a claimant's status as a plan participant must be measured at the time of the alleged ERISA violation and not at the time of filing suit. To hold otherwise allows an employer's wrongful conduct to immunize it from federal liability. An employer cannot be allowed wrongfully to terminate an employee benefit plan and distribute plan benefits in lump sum before the claimant files suit, and thereby deprive the claimant of standing to sue for the wrongful conduct.

The district court did not err by holding that McBride's state law claim for breach of the covenant of good faith and fair dealing was preempted by ERISA as the contract was clearly related to the ERISA plan.